## MUNSON *vs.* MUNSON AND ANOTHER.

A conveyance by the plaintiff, to his two sons, of real estate, and personal property, consisting of stock and farming tools, contained the following words : " My said sons are not to reduce or impair the value of the stock I have assigned to them ;" and said " land, property and chattels, shall be liable for the support of their mother;" and also contained a condition, that said sons should furnish their mother with a suitable and proper support in all things reasonable, during her natural life, and said land, and property, and chattels, should be liable therefor, and they should pay to the daughter of the grantor, within three years from date, the sum of $300, with interest after it fell due, and also pay certain specific notes, and all other notes and accounts, owing by the grantor; and in case said sons should fulfil said conditions, said deed should be good and valid, but otherwise void. Held, 1. That by such deed a present legal title to said personal property vested in the defendants, defeasible on the non-performance of said condition. 2. That such title was not necessarily an unqualified one, but that a special interest in said property was retained by the grantor, amounting to a reservation of a lien thereon, for the security of that part of the condition requiring the defendants to furnish their mother the support therein mentioned.

Where such grantees, from time to time, sold and exchanged the greater part of said stock without the permission of the plaintiff; it was held, that although they acquired, and kept, other stock in place thereof, of equal or greater value,

they thereby forfeited their right to the possession of the stock so conveyed, and that the plaintiff might maintain an action of trover therefor.

Where, in such action of trover for the stock so sold, the defendants, for the purpose of aiding in the construction of such deed, offered evidence of the character of the stock conveyed, its liability to deterioration, and of its inevitably in time becoming useless, and even a burden, if not disposed of; it was held, that, inasmuch as the language of the deed was intelligible, and such evidence did not conduce to prove that said language was not used in its ordinary meaning, it was inadmissible.

Where, on the trial of such action, it was proved that the defendants had paid the plaintiff's debts, also the three hundred dollars to their sister, as required by the condition of said deed; it was held, that the damages to which the plaintiff was entitled, were not reduced by such payment.

Where the declaration in such action contained several counts, some in trover and some in trespass, and it was stated in the commencement of the seventh count, which was the first count in trespass, that the preceding and following counts were for the same cause of action; it was held, that as such averment was introduced for the purpose of justifying the joinder of the counts in trover and trespass, under the statute, the plaintiff was not confined, on the trial, to the proof of only one cause of action.

THIS was an action on the case, brought by Cornelius Munson against John D. Munson and Robert C. Munson.

The declaration contained twelve counts, seven of which were in trespass, and the remainder in trover. At the term of the superior court for the county of New Haven, the cause was tried by the jury, on the general issue.

On the trial, it was proved, that the plaintiff was originally the owner of certain cows, oxen, swine, sheep, and other stock mentioned in the declaration; and that the defendants had never had any title thereto, except such as they acquired by virtue of the following deed:

" *To all whom these presents shall come, Greeting:*

" Know ye, that I, Cornelius Munson, of Watertown, in the county of Litchfield, and state of Connecticut, for the consideration of the love, affection and good will which I have for my sons, John D. Munson, and Cornelius R. Munson, both of said Watertown, as well as for divers other considerations, sums of money and undertakings, which will appear in the condition of this instrument, which have been received

to my full satisfaction of my said sons, John D. and Cornelius R., do give, grant, bargain, convey and confirm unto the said John D. and Cornelius R. the following described land and real estate.   *   *   *

" To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto them, the said grantees, their heirs and assigns forever, to them and their proper use and behoof; and also, I, the said grantor, do for myself, my heirs, executors and administrators, covenant with the said grantees, their heirs and assigns, that at, and until the ensealing of these presents, I am well seized of the premises as a good, and indefeasible estate in fee simple, and have good right to bargain and sell the same in manner and form as above written, and that the same is free of all incumbrances whatsoever.   And furthermore, I, the said grantor, do, by these presents, bind myself and my heirs, forever, to warrant and defend the above granted and bargained premises to them, the said grantors, their heirs and assigns, against all claims and demands whatsoever.

" And I do further hereby assign, transfer and deliver to my said sons, John D. and Cornelius R., all my stock of every description, including horse, colt, oxen, cows, young cattle, swine and sheep, it being understood that my said two sons are to allow me, and furnish me with one suitable and proper horse, to use whenever and wherever I choose, and that my said sons are not to reduce or impair the value of the stock I have hereby assigned and conveyed to them; I likewise assign to my said sons all my farming-tools and utensils, of every name and description, and likewise my wagons, to be theirs forever.

" Always provided, that if my said sons, John D. and Cornelius R., shall furnish their mother, Fanny Munson, with a suitable and proper support in all things reasonable, during her natural life, and that said land and property and chattels shall be liable therefor; and they are, that is to say, my said sons, John D. and Cornelius R., are hereby bound by this

instrument to pay my daughter, Nancy M., the wife of Truman Percy, at or within three years from date, the sum of $300, with interest, after it falls due; and they are likewise to assume and pay the following notes or debts which I owe, in a reasonable time, viz., one or more notes due Samuel Elton, of about two hundred dollars, being all I owe him; and John Nettleton, of said Watertown, a debt of about one hundred dollars, being all I owe him; and likewise all the other notes and accounts which I owe, which I can not now particularly enumerate, then, and in case of my said sons, John D. and Cornelius R., performing and fulfilling all the conditions above named, in as full and ample a manner as is therein written, the foregoing deed, conveyance and assignment, shall be perfectly good and valid, but otherwise to be void."

It was admitted, that said deed was duly executed by the plaintiff, and delivered to the defendants, who were his sons, about the date thereof, together with said stock and other property, real and personal, therein specified, and of which the defendants immediately thereafter entered into possession, under said deed.

It was proved and not denied, that the defendants had, from time to time, made sales and exchanges of said stock or the greater part thereof, and had, thereupon, purchased and received, or otherwise acquired and continued to keep in lieu thereof, other stock of equal or greater value than the stock so conveyed to them by the plaintiff, and sold or exchanged.

And it was thereupon claimed by the plaintiff's counsel, that the legal construction of said deed was such, that the title to the stock so sold and exchanged by the defendants, was retained by the plaintiff, and that the sale or exchange thereof was a tortious conversion of the same, and that the defendants were liable, in this action, to the plaintiff, for the value thereof, notwithstanding they had continued to keep in lieu thereof, other stock of equal or greater value; which construction was denied, by the counsel for the defendants,

to be correct, who insisted, on the contrary, that by virtue of said deed, the defendants had good right to sell and exchange said stock, and to substitute therefor other stock of equal or greater value, as it was proved and admitted they had done.

The plaintiff, on said trial, abandoned all the counts in trespass in said declaration, and disclaimed any right to recover thereon. The counsel for the plaintiff having introduced evidence under the first count in his declaration, tending to prove the conversion of a part of the property specified in said count, viz., the stock before mentioned, thereupon offered testimony under the other several counts in trover, successively, tending to prove divers other subsequent and distinct conversions, on divers days, of other articles of personal property specified in said first and other counts in trover; to the admission of which testimony the defendants' counsel objected, on the ground that said several counts in trover are averred to be for the same causes of action, accruing at one and the same time; but the court overruled said objection, and admitted the evidence so offered, tending to prove such successive conversions, under said other counts in trover respectively.

For the purpose of aiding in the construction of said deed, by the application of the language used therein to the circumstances existing, and in relation to which said deed was executed, the defendants' counsel offered testimony to prove, that, at the time of the execution and delivery thereof, the character of said stock was such, in respect to the ages of the animals, the capabilities of the farm for their support, the purposes and uses for which such animals had been and were there ordinarily raised, kept, and disposed of, and the usages and requirements of good husbandry, as to render it obviously proper, from time to time, to sell and dispose of the same, and to substitute therefor other stock of equal value, and of suitable ages and condition, in the manner the defendants were proved and admitted to have done, as aforesaid; to which testimony the plaintiff's counsel objected, on the

ground that the same was inadmissible for the purpose for which the same was offered as aforesaid, and was irrelevant to the issue. The testimony was received, subject to said objection, and to the ruling of the court, in the charge to the jury in relation thereto.

It was proved on the part of the defendants, that the defendants had paid the debts of the plaintiff, and also the sum of three hundred dollars to their sister, Nancy Percy, as required by the condition of said deed, amounting in all to eight or ten hundred dollars; an amount greatly exceeding the value of said stock and the other personal property conveyed by said deed; and the defendants introduced evidence to prove, and claimed that they had proved, that they had kept and fulfilled, in all respects, each of the other conditions or requirements of said deed.

The defendant's counsel claimed, that the court should instruct the jury, that, by the true and legal construction of said deed, irrespective of the testimony so offered and objected to, the defendants had a right to dispose of said stock, or any part thereof, in manner aforesaid, and were only required thereby to keep other stock in lieu thereof, of equal value, and not the same animals specifically, as was claimed by the counsel for the plaintiff.

They also insisted that the circumstances under which said deed was executed, to prove which they had introduced evidence as aforesaid, might properly be considered, in connection with the language used in said deed, in relation to said stock, and that in view of said evidence, said language must be deemed to have been used in the sense claimed by the defendants, and acted upon by them.

The defendants denied that they had been guilty of the tortious conversion of any other property of the plaintiff, and introduced evidence tending to disprove the same; and in regard to said stock, they further claimed and prayed the court to instruct the jury, that if the sale and exchange thereof, was a tortious conversion of the same, for which the

Munson *v.* Munson and another.

defendants would be liable to the plaintiff, yet, if the defendants had paid, for the benefit of the plaintiff, an amount exceeding the value thereof, and had kept and performed the other conditions of said deed, the plaintiff had not been damnified thereby, and could not recover therefor, or at most, that he could only be entitled to nominal damages for such conversion, but the court omitted and refused so to instruct the jury.

The court rejected the testimony offered by the defendants, as aforesaid, and thereupon instructed the jury, according to the claim of the counsel for the plaintiff, that if they should find that the defendants had sold, without the license or permission of the plaintiff, said stock, or any part thereof, specified in said deed, such sale was a tortious conversion, for which the plaintiff would be entitled to their verdict for the value thereof, with interest from the time of such conversion.

The jury rendered their verdict in favor of the plaintiff, and the defendants moved for a new trial, on the ground that the court erred, and mistook the law in excluding the evidence offered by them, and in refusing to instruct the jury as claimed by their counsel, and in charging them in manner aforesaid, and against the claims of the defendants as to the construction of said deed, and the damages recoverable by the plaintiff.

*Baldwin* and *Webster*, in support of the motion.

1. The defendants had the right, by virtue of their deed, to sell and exchange the stock, and substitute other stock of equal or greater value.   Chit. on Con., 74, 76.

2. The testimony, offered by the defendants, to aid in the construction of the deed, was improperly excluded.   Chit. on Con., 80, 81.   22 Conn. R., 530.   4  Conn. R., 273.

3. The testimony, to prove successive conversions under the declaration, was improperly admitted.

4. The plaintiff must have the right to the immediate pos-

session of a chattel, in order to maintain trover. 2 Greenl., 640. 1 Chit. Pl., 170, 174.

5. If the sale and exchange of the stock was a tortious conversion of the same, for which the defendants would be liable to the plaintiff, yet if the defendants had paid, for the benefit of the plaintiff, an amount exceeding the value thereof, and had kept, and performed hitherto, the other conditions in said deed, the plaintiff had not been damnified thereby, and could not recover therefor, or at most that he would be only entitled to nominal damages for such conversion. 20 Conn. R., 206–208.

6. There is a misjoinder of causes of action, the first six counts being in trover, and the last six in trespass. This is fatal on motion in arrest. 1 Chit. Pl., 236. 19 Conn. R., 133. Gould. Pl., ch. 10, § 11.

*R. I.* and *C. R. Ingersoll*, and *Buel* and *H. B. Munson*, contra.

I. The deed to the defendants did not convey the title of the personal property mentioned therein. It was a transfer of the possession of the stock, with the right to use the same, upon conditions; and upon the performance of said conditions only, was the title to vest, and become absolute. The legal character of the instrument is adapted to the contract, and the property upon which it was intended to operate.

The real estate is conveyed in the usual form and language of an absolute transfer of title, subject to the conditions; and in this the plaintiff was secure, because he could enter for condition broken, even after a sale by defendants. But in regard to the personal property, entirely different phraseology from that of an absolute transfer is used; and this was necessary, because the plaintiff could not enter for condition broken, or reclaim it, if he parted with the title, and he must retain the title for his security. The considerations in the deed are the performance of the conditions, and these are all continuing, and to be finally performed only *in futuro.*

There are no covenants, or undertakings, on the part of the defendants, to perform a single condition, nor are they in any way obligated to perform them, unless they so elect; the only inducement to perform is the property mentioned in the deed, which was to be theirs only upon the performance of all the conditions. The language of the deed negates the passing of the title of the personal property *in presenti* at all. The language is not the usual and ordinary terms of conveyance of title, but is applicable to a delivery of possession merely. The provision that the stock conveyed was not to be reduced in number, or the value impaired, is consistent only with the construction that he had not parted with the title, and was providing for the security of his own property, while in the use and possession of the defendants. The final clause is conclusive, that no title was to be perfected, nor was the deed to be operative to pass the title, until all the conditions were performed. There being no obligation or covenants on the part of the defendants in this deed, if, with all its conditions, provisos and guards, it is to be held as an absolute conveyance of title, the plaintiff is remediless, and the defendants can hold the entire property without performing the conditions. The intention of the grantor being apparent, the deed is to be so construed as to effectuate that intention, and protect the plaintiff. 1 Sw. Dig., 229.

II. It being admitted that the defendants had no rights in the property, except such as they acquired by the deed, they had no power to sell, change or dispose of the stock, without the license or permission of the plaintiff.

No power is given in the deed to sell or substitute. No necessity is shown for the sale of the stock. If the defendants have this right, then they may substitute one kind of stock for another. The sale, if the defendants had the right, destroyed the plaintiff's title and lien upon the stock sold, and he could have none, as against third parties, upon the substituted stock.

III. The jury having found that the defendants sold and

disposed of the stock, without the license or permission of the plaintiff, the sale was a conversion. 1 Sw. Dig., 545. 23 Conn. R., 70.

The plaintiff's right of action having accrued by the sale of the stock, the defendants could not discharge, or evade, that right, by substituting other stock, in lieu of that thus unlawfully appropriated.

IV. The evidence offered of the " usages and requirements of good husbandry, of the practice of farmers in the vicinity, and of the existing circumstances," &c., to aid in the construction of the deed, was clearly inadmissible. Chit. on Con., 99, 105.

There is no ambiguity in the deed calling for evidence of extrinsic facts to aid in its construction. Whether the contract, as made by the parties, was in accordance with good husbandry, or the practice of farmers, is unimportant; it is such as the plaintiff saw fit to make, and the defendants accept, and by it they must be bound. The motion does not disclose that, nor was there any evidence offered, that there was any actual necessity for the sale.

V. The rule of damages, as claimed by the defendants, and in regard to which they requested the court to charge the jury, was not the true rule.

The plaintiff's right of action having accrued, and being complete upon the sale, no substitution of other stock could impair or affect this right. A return, and replacing, of the original stock, so sold, before suit brought, might have made it a case for nominal damages.

VI. Under the several counts in trover, the plaintiff was not confined to the proof of one conversion, but might prove as many as there were counts in the declaration.

The time is not material, and is laid under a *videlicit*, and in each count as being " afterward." 1 Sw. Dig., 675. 1 Ch. Pl., 257, 258. Each count is to be treated as a separate declaration. The averment that the causes of action in the several counts are the same, is only this, that the counts in

trespass and trover, are for the same cause of action, in order to permit the joinder under the statute.

VII. The declaration is sufficient.

STORRS, J.   The title of the plaintiff to the personal property in question in this case, depends on the true construction, and effect, of the deed, by which it is claimed that he conveyed it to the defendants.   That deed, especially as to the stipulations and condition contained in it, is very informally and loosely .expressed ; but, in our opinion, the meaning of the parties, in regard to the personal property mentioned in it, with which only we have here any concern, is quite plain, from the language used, and the nature of the transaction with which it is conversant.   In accordance with the cardinal rule of construction as to all contracts, that intention should, if possible, be carried into effect, and we think that there is no difficulty in doing so in this case.

We do not think, with the defendants, that the terms of the deed authorized them to sell or exchange the stock conveyed by it, on their substituting in lieu thereof, on the farm, other stock of equal value.   It not only says nothing respecting such a sale, exchange, or substitution, but, on the contrary, stipulates that that stock, as well as the other property conveyed, shall remain liable for the support provided in the deed for the plaintiff's wife.

Nor do we accede to the claim of the plaintiff, that by this deed no present legal title to the personal property in question was conveyed to the defendants, and that whether a title should vest in them depended on their performance of its condition.   In reference to that property, the terms used by the grantor are, " I do hereby assign, transfer and deliver to [the defendants] all my stock," &c.   These are the most apt, and indeed the technical terms, for the conveyance of personal property, and the deed contains no language which imports that the interest in it, which was conveyed, was not to vest immediately.   The form of expression in the condi-

tion was, in our opinion, intended, not to postpone the vesting of an estate in the property, but only to make the conveyance defeasible on its non-performance. This is evident from the whole scope of the instrument.

But although the deed passed a present interest in these chattels to the defendants, it was not, necessarily, an unqualified one; a general property in them might have been vested by it in the defendants, and a special interest retained by the plaintiff. Now it is very clear that, while the plaintiff intended to convey this property to the defendants, he also intended that it should not be disposed of by the latter, but that it should be holden by them as a security for the performance of that part of the condition requiring them to furnish to their mother the support therein mentioned, during her life ; for there is a provision in the deed that they " are not to reduce, or impair the value of, the stock, which he had thereby assigned and conveyed to them," and that the said " property and chattels shall be liable" for said support. This amounts to a reservation, by the plaintiff, of a lien on the stock for the security of that object. The defendants were indeed left in the possession of the property, and therefore the sale of it to a person not cognizant of this lien, might vest an absolute title to it in their vendee ; but the question here as to its title, is between the parties to the deed, and not between the plaintiff and such vendee. We see no objection to the validity of the reservation of a lien as between the parties to the instrument, and consider the case as though the defendants had mortgaged the stock to the plaintiff for the security of the provision for the mother's support, with an agreement that the defendants might retain possession of it, until that provision was violated. In this view we think that the principle settled in *Ashmead* v. *Kellogg*, 23 Conn. R., 70, is applicable to the case, and that as the sale of the stock, without the permission of the plaintiff, was a misappropriation of it to a purpose different from that for which the defendants were allowed to retain and use it,

it constituted a wrongful conversion of it by them, which operated as a forfeiture of their right of possession, and vested it in the plaintiff. He was therefore entitled to a verdict. It will be perceived, that the ground on which we put his right to recover, is, not that the condition of the deed was broken, for it did not appear that there had been any such breach, but that he had been wrongfully deprived of the interest which he had in the property, here in question, by virtue of an independent stipulation in the deed. This view does not appear to be applicable to the land, for which it has been suggested that an action of ejectment is pending in favor of the plaintiff.

We do not think that the testimony offered by the defendants, for the purpose of aiding in its construction, was admissible. Its language is intelligible, taken in its ordinary sense, and that evidence did not conduce to prove that it was used in any sense which was peculiar or different from its natural meaning, and the only effect of it would be to show the improvidence of the arrangement which the parties had chosen to make. Considering the character of the stock conveyed, its liability to deterioration, and that it would inevitably in time become useless, and even a burden, if it was not disposed of, that arrangement would certainly appear to be, ordinarily, a very singular one; but it was manifestly designed by the plaintiff as an amicable and final arrangement of his property for the benefit of himself and his family, by which the property itself should be held chargeable for the performance of the provisions made for them, and it is not improbable that, with regard to the stock and other personal property, the defendants, his sons, were willing to rely on obtaining the consent of their father to a sale or exchange of any part of it which might become necessary, and which it would be as much for his interest as theirs to give. But it is sufficient for us, that they chose to make the arrangement disclosed in the deed.

As to the question of damages, we think that they ought

not to have been reduced by the payments, made by the defendants, to the daughters and creditors, of the plaintiff. The property, disposed of by the defendants, as well as the rest of the property conveyed by the deed, was, not only by the terms of the condition, but also by a distinct stipulation, made liable, on the non-performance of the requirement contained in it, for the support of their mother during her life; and although the condition had been performed up to the time of the trial, yet as the mother was still living, and the remaining property might be inadequate security for her future support, the security furnished by the property, disposed of by the defendants, would be lost to the plaintiff, unless its value should be recovered by him, to be held for the purpose for which it was so charged. It would be contrary to the intention of the parties, and palpably unjust, to throw the hazard of the security for that support on the remaining property. The plaintiff should, by the verdict, be placed in as good a situation with respect to his security for the future performance of the stipulations of the deed, as if the property had been retained by the defendants, and this could be done only by allowing him to recover its value. If, by the terms of the deed, the property converted by the defendants was made chargeable only for the payments which have been made by them, or if no part of the conditions or stipulations remained to be hereafter performed, a different question would be presented. We think that there is an obvious difference between the present case and those relied on by the defendants, where it was held that the damages in trover should be reduced below the value of the property converted, in consequence of its having been returned to and received by the plaintiff, or of his having received the benefit of it, by its being specifically appropriated, under legal process, by his creditor, for the payment of his debt.

The declaration, in this case, containing several counts in trover, the plaintiff was not confined, on the trial, to proof of only one cause of action. The familiar rule, that in such

cases the plaintiff may prove as many causes of action as there are counts, is applicable here, although it is stated in the commencement of the seventh count, which is the first count in trespass, that the preceding and following counts are for the same cause of action. That averment was plainly introduced, for the purpose of justifying the joinder of counts in trover and trespass under our statute, which allows counts in trespass and case for the same cause of action, to be united in the same declaration ; it is not to be regarded as any part of the statement or description of the causes of action set forth in the declaration, and its effect should be limited to the purpose for which it was introduced.

The motion in arrest of judgment for a misjoinder of causes of action, is groundless, as that objection, which would be clearly fatal by the rules of the common law, is obviated by the statute which has been mentioned.

A new trial is not advised.

In this opinion, HINMAN, J., concurred.


WAITE, C. J. The court in this case instructed the jury, that if they should find, that, the defendants have sold any part of the stock, specified in the deed, without the permission of the plaintiff, such sale was a tortious conversion, for which the plaintiff was entitled to their verdict, for the value thereof, with interest from the time of the conversion.

To the correctness of that instruction, founded, as it was, upon the case stated in the motion, I can not yield my assent.

The deed of the plaintiff conveyed to his two sons the real and personal property therein described in fee, subject to a condition, that, if they furnished their mother a suitable support during her life, paid a certain sum to his daughter, and paid all his debts, the conveyance was to be " perfectly good and valid, otherwise void."

There was no claim made on the trial, that the defendants had not performed all these conditions, supported their mother, and paid their sister, and the debts of the plaintiff. So long as they performed those conditions, the deed, by its very terms, was perfectly good and valid, and vested in them the property in fee.

The case, at least so far as the real estate is concerned, and in this respect there is no difference between that and the personal property, is precisely like that of *Chalker* v. *Chalker*, 1 Conn. R., 79. There the plaintiff had conveyed to his brother's widow and her children, certain lands, upon condition that they paid him a certain annuity, but in default of such payment the deed was to be void. The court said the grantees were well seized and possessed of the lands, under the deed, and had a complete title in fee, vested in them, subject only to be devested, in consequence of the non-payment of the annuity ; and that the grantor could not sustain an action at law, to recover possession of the lands, without showing that the grantees had failed to perform the condition of the deed.

The same rule applies to the case under consideration. No action at law can be sustained by the plaintiff, to recover for any of the property conveyed by his deed, without showing a failure, on the part of his sons, to perform the condition. And so, in my opinion, the jury should have been told.

But stress is laid upon the clause, "it being understood that my sons are not to reduce or impair the value of the stock I have hereby assigned and conveyed to them," as relieving the case from the operation of the general rule. In the first place, it is to be observed that this clause is not in the condition of the deed, nor is it provided in the deed, that it shall be void, if the value of the stock should be impaired.

But what did the parties mean by that understanding ? That the sons should keep the horses, the oxen, the cows, the sheep and the swine until they all died of old age ? Such a construction would render the conveyance almost valueless

to the sons, and of no use to the plaintiff. The swine, for instance, would be nearly worthless, if they could not be fattened and killed. And some of the other stock might not be worth much more.

As it was, more than six years intervened between the conveyance and the commencement of the plaintiff's suit. Had the stock all been kept during that period, how much would it have been worth to the plaintiff, even if he had shown a breach of the condition of the deed?

The true construction, in my opinion, was as claimed by the defendants' counsel. They had a right to sell and exchange the stock, and substitute therefor other, of equal or greater value. And so I think, the parties understood the agreement at the time. Any other construction, as it seems to me, would be unreasonable and absurd.

Again, the jury were told that the defendants could not sell the stock, without the permission of the plaintiff. But he had no inducement to give such permission, and men are not supposed to act without motives.

He had parted with all his interest in the property, except a lien to recover the performance of the condition. He stands much in the situation of a mortgagee, who can sustain no action at law, for any waste committed upon the property mortgaged, although he might have an injunction against the commission of such waste as would render the pledge inadequate security.

So in the present case, as long as there has been no forfeiture, the plaintiff can sustain no action at law. Were the sons to commit waste, so as to endanger the security, he might sustain a suit in chancery, to prevent the commission of such waste.

But even if there has been a forfeiture, and compensation can be made, a court of equity has power to relieve against it, when making such compensation.

Again, the plaintiff did not show that he had sustained any damage, by reason of the sale of the stock, and yet the jury

were told that he was entitled to recover the value of the stock sold. This, as it seems to me, is not in accordance with the rule that, in an action at law, a plaintiff shall recover no more damages than he has actually sustained.

Thus a surety, who brings an action upon a bond of indemnity, can recover no greater damages than he has sustained, however great may be his liabilities.

For these reasons, I am of opinion that a new trial ought to be granted.

A new trial not to be granted.