## CHAPIN *against* PEASE.

A conveyance made with intent to defraud creditors, as between the parties, stands on the same ground as if it were *bona fide* and for an adequate consideration; and neither at law nor in chancery can the grantee be compelled to reconvey.

A reconveyance by a fraudulent grantee, without consideration and in failing circumstances, to his grantor, is fraudulent and void as to the creditors of the former.

Therefore, where *A,* in 1817, with intent to defraud his creditors, conveyed land to *B,* who continued in possession until 1828, when, being in failing circumstances, he reconveyed the land, without consideration, to *A;* it was held, that such reconveyance was fraudulent and void as against *C,* a creditor of *B,* whose debt was contracted in 1826.

And where it appeared, in such case, that *C* had levied an execution on such land, as the property of *B,* and claimed title, through such levy, under the deed from *A* to *B* in 1817; it was held, that *C* was not precluded, by the rule that a party cannot be permitted to impeach the title under which he claims, from shewing such deed to be fraudulent, for the purpose of avoiding the deed of reconveyance, which stood in the way of *C's* title.

On the trial of an action of ejectment, brought by *C* against *A,* involving the validity of such deed of reconveyance, the defendant offered the declarations of *B,* made to *C,* out of court, shewing that the deed of 1817 was *bona fide,* being intended as a security for responsibilities incurred by *B* on *A's* account, and a writing of defeasance simultaneously given back; *B* at the time such declarations were offered, being present and a competent witness; it was held, that such declarations were inadmissible, being irrelevant and mere hearsay.

THIS was an action of ejectment; tried at *Hartford, February* term, 1833, before *Daggett,* Ch. J.

Both parties claimed title to the premises under *Barnabas Pease;* the plaintiff, by the levy of an execution, on the 12th of *December,* 1829; the defendant, by a deed from *Barnabas Pease* to him, dated the 21st of *October,* 1828. The levy of

the plaintiff's execution was admitted to be correct; and the controversy turned on the validity of the defendant's prior deed. The plaintiff claimed, that this deed was executed without consideration, and was fraudulent and void as to the creditors of the grantor; and that the plaintiff was one of those creditors, having a debt against him contracted in 1826. It was not claimed by the defendant, that any consideration passed from him to *Barnabas Pease,* at the time of executing the deed; but he insisted and claimed to have proved, that in the year 1817, wishing to raise money by the indorsements of *Barnabas Pease,* he agreed with him to take a clear deed of the premises, in order to save himself harmless from any responsibilities he might come under for the defendant, and to give him back a writing of even date with the deed, to reconvey the premises to him, whenever he (*Barnabas Pease*) should be freed from all liabilities which he might thus incur; that in pursuance of such agreement, the deed and defeasance were executed, and the deed duly recorded; and that the transaction was *bona fide* and not entered into with a view to defraud the creditors of the defendant. And he insisted, that the deed and writing, taken together, constituted a mortgage; that *Barnabas Pease,* being freed from all liabilities, was bound to reconvey; and in so doing, had done no more than a court of chancery would have compelled him to do.

To repel these claims, the plaintiff insisted, and claimed to have proved, that the writing of defeasance was not executed as claimed by the defendant, but was a recent transaction; that the deed to *Barnabas Pease* was absolute, and so intended to be; that it was not *bona fide,* but was made to defraud the creditors of the defendant, and particularly, *R. & L. Parsons & Co.,* to whom he was then indebted.

It was admitted, that *Barnabas Pease,* at the time he executed the deed in question to the defendant, was much in debt, and failed four days afterwards.

On these facts and claims of the parties respectively, the court charged the jury, that if they should find, that the deed of 1817 was not executed in good faith, but with the intent to defraud the creditors of *Moses Pease,* then they would find the deed in question to be without consideration and void, and their verdict must be for the plaintiff.

In the progress of the trial, the defendant offered *Nelson*

*Hartford,*
*June, 1834.*

Chapin
*v.*
Pease.

*Phelps*, to testify, that in the year 1828, he was present at a conversation between the plaintiff and *Barnabas Pease*, and heard the latter inform the former, that the deed and writing of 1817 were executed and delivered in the manner and for the purpose claimed by the defendant, as before stated ; and that he (*Barnabas Pease*) had now no claim to hold the land, but was bound to convey it to the defendant. *Barnabas Pease* was then in court, and a competent witness, who had testified in the cause. The plaintiff objected to the testimony so offered ; and the court rejected it, on the ground that it was mere hearsay.

The plaintiff obtained a verdict ; and the defendant moved for a new trial.

*W. W. Ellsworth* and *Toucey*, in support of the motion, contended, 1. That if the deed of 1817 was a fraudulent conveyance, still the *plaintiff* could not avoid it on that ground. Such a conveyance is void "as against those persons only, whose debt or duty is endeavoured to be avoided." *Stat.* 247. *tit.* 40. *s.* 1. The plaintiff is not one of that description of persons : he was never a creditor of the grantor. Even in the case of usury, it is settled law, that no other person than the oppressed party, can avoid the contract on that ground. *Reading* v. *Weston,* 7 *Conn. Rep.* 409.

2. That if the deed of 1817 was fraudulent and void, the premises, while they were held by *Barnabas Pease*, under that deed, were liable to be taken by the creditors of the defendant ; and after they were reconveyed, and restored to the original proprietor, a creditor of the grantee of the first deed, could not come in and take the property.

3. That as the title claimed by the plaintiff was derived through the deed of 1817, he could not impeach the validity of that deed.

4. That the testimony of *Nelson Phelps* was unexceptionable, and should have been received. It shewed notice in fact of the defeasance, to the plaintiff. If the defeasance had been put on record, he would have had *constructive* notice : as it was not, it became material to show *actual* notice. And this might be proved, by any person, who heard the notice given. This testimony was not *hearsay*. *Nelson Phelps* testified to

*a fact,* which took place in his presence. He was an ear-witness of that fact.

*Hungerford,* contra, insisted, 1. That the deed of 1817, was absolutely void as against creditors, but as valid and available for every purpose, as between the parties, as any other deed. *Stat.* 247. *tit.* 40. *s.* 1. *Starkie's* exrs. v. *Littlepage,* 4 *Munf.* 368. *Chamberlayne* & al. v. *Temple,* 2 *Munf.* 384. The question whether that deed was made with intent to defraud the creditors of the grantor, was put directly to the jury, by the court, and has been answered in the affirmative, by the verdict.

2. That the premises being thus the property of *Barnabas Pease* from the delivery of that deed, he could not subsequently convey that property, without consideration, and in failing circumstances, to the prejudice of his creditors. And here it is not necessary to inquire, whether there is any difference between the rights of existing and subsequent creditors ; for here the plaintiff's debt was contracted in 1826, two years before the deed from *Barnabas Pease* to the defendant. *Reade* v. *Livingston,* 3 *Johns. Chan. Rep.* 500.

3. That the testimony of *Nelson Phelps* was properly rejected. In the first place, this was not a case of notice. Whether the facts were such as they were claimed to be, by the plaintiff or by the defendant, no notice was necessary, or of any avail whatever. The only possible effect of the testimony offered, was, to show, that the plaintiff's claims were unfounded. Then, secondly, as this was to be shown, by the declarations of *Barnabas Pease,* himself a competent witness then in court, it was a clear case of *hearsay* testimony.

BISSELL, J.   The first question arises upon the correctness of the charge. And here it should be remarked, that it stands admitted on the motion, that the conveyance from *Barnabas Pease* to *Moses Pease,* the defendant, was entirely voluntary. This, in connexion with the fact of *Barnabas Pease's* insolvency and the claims of the conflicting parties, is to be taken into view, in considering this question. If this be done, it seems to me, that the charge is sustainable, upon the plainest and most obvious principles.

The conveyance from the defendant to *Barnabas Pease,* in

1817, being intended to defraud the creditors of the former, was void as to them, but good as between the parties. *Stat.* 247. *tit.* 40. *s.* 1. *Drinkwater* v. *Drinkwater*, 4 *Mass. Rep.* 354. *Parker* v. *Proctor*, 9 *Mass. Rep.* 390. *Reade* v. *Livingston*, 3 *Johns. Chan. Rep.* 500. *Benton* v. *Jones*, 8 *Conn. Rep.* 186.

Neither at law nor in chancery, could *Barnabas Pease* be compelled to reconvey. As between the parties, the conveyance stood on the same ground, as if a full and adequate consideration had been paid.

Whether the conveyance was thus fraudulent, was distinctly put to the jury; and they have answered the question. As against every body, then, but the creditors of his grantor, *Barnabas Pease* had a valid title. The record title was in him; and for a period of eleven years, and up to the time of his insolvency, he was held out to the world as the owner of the property.

Under these circumstances, the conveyance from *Barnabas* to *Moses Pease*, being voluntary, was fraudulent and void, as to the creditors of the former. *Sexton* v. *Wheaton*, 8 *Wheat.* 229. *Reade* v. *Livingston*, 3 *Johns. Chan. Rep.* 500.

But it has been contended, that it was not competent for the plaintiff to insist, that the conveyance of 1817 was fraudulent, as he was thereby impeaching his own title.

There is much more of plausibility, than of soundness, in this objection. It is an undoubted principle, that a plaintiff cannot be permitted to impeach the title, under which he claims. But a slight attention to the facts will evince, that the principle has no application to the case.

To entitle the plaintiff to recover, it was only necessary for him to remove out of the way the deed of 1828, which had been interposed by the defendant. This he does, by showing it to be voluntary. Unexplained, this is conclusive; and a case is thus made out, for the defendant to answer. He attempts to do so, by setting up the facts detailed in the motion. May not the plaintiff show these facts to be untrue; and that these claims of the defendant are unfounded? And is it to be seriously urged, that in doing this, he is impeaching the title, under which he claims?

Again: It is objected, that the plaintiff cannot recover, inasmuch as upon the grounds assumed in the charge, and upon

which the jury have given their verdict, the property has ever been open to the creditors of *Moses Pease.* And it has been asked, were they to levy upon it as his estate, would they not hold as against this plaintiff? It will be time enough to settle that question, when it arises. But it may well be asked, whether it is for the defendant to interpose this objection? Is it for him to say, the jury have found, that I made a conveyance to defraud my creditors, and as the conveyance is void *as to them,* therefore, a creditor of my fraudulent grantee, may not recover, *as against me?* It is exceedingly obvious, that the same objection might have been urged, had *Barnabas Pease* never reconveyed, and the title had been outstanding in him, at the time of the plaintiff's levy.

I see no reason for granting a new trial, on the ground that the case was not properly submitted to the jury.

The only remaining question is, whether the declarations of *Barnabas Pease,* offered in evidence, were properly rejected.

The evidence is obnoxious to two objections, either of which is conclusive. In the first place, it is irrelevant. It was offered for two purposes : 1. as conducing to show, that the writing of defeasance was executed simultaneously with the deed; and 2. to show that the plaintiff had notice of that fact. Of what importance, it may be asked, is the fact itself? The jury have found, that the deed was made with a fraudulent intent, and was void as to creditors. Is the reproach of fraud removed, by showing that a defeasance was executed at the same time? And if the fact were unimportant, it follows, that notice of it to the plaintiff, was equally so. Besides, the conversation took place long after the plaintiff's debt had accrued : and even if the fact were of any consequence, the notice was entirely nugatory.

But, secondly, admitting the testimony to be relevant, still it was open to all the objections against hearsay evidence. *Barnabas Pease* was a competent witness, and as the motion shows, testified in the cause. Why not prove the execution of the defeasance by him? Why should his declarations, not under oath, be received for that purpose? The evidence, it should be remembered, was not offered for the purpose of confirming the witness, as to any fact to which he had sworn ; but for the purpose of proving a fact, which the party deemed

important. In this point of view, the testimony was clearly inadmissible ; and the rule must be discharged.

The other Judges were of the same opinion.

New trial not to be granted.