Mr. Justice MacArthur
delivered the opinion of the-court:
The complainants filed their bill on the 2d of September,, 1854, against the administrator and heirs at law of Elijah Shelton, deceased, alleging that they were creditors of the said Shelton, that the personal estate was not sufficient to pay their-debts, and they therefore ask that the real estate be sold, and their claims paid out of the proceeds. I state the scope ' of the bill in this general manner in the. outset, in order to-meet an objection taken to the jurisdiction of the court,, which it will be proper to dispose of before considering the other questions involved.
The point was made in argument that the creditors of a deceased person could not come into a court of equity and ask for the administration of the assets belonging to his *315 estate until they had established the amount of their claim by a judgment at law. This principle is undoubtedly correct when applied to an ordinary creditor’s bill, where the judgment-debtor is alive and can be made a party, and where he has concealed his property, or has equitable interest that cannot be reached at law. The object of such a bill is to discover his property and apply it to the satisfaction of an execution. In such case the remedy at law must be exhausted before you can pursue the remedy in a court of equity. This principle does not, however, apply here; for the administration of the assets of a deceased person is a well-established rule in equity. Mr. Story explains the doctrine fully, and traces the jurisdiction to the power and duty of the court to enforce the execution of trusts. It is held that the estate of a deceased person ought to be applied to the payment of his debts and legacies, and that the estate is subjected to this trust in the hands of any person who may be entitled to its possession, or who may have obtained it with notice of the trust. The jurisdiction is therefore properly cognizable in equity. 1 Story, Eq. P., secs. 530 to 547, and foot-notes. One of the members of the court intimated some difficulty on this point at the hearing, but he now concurs in the views expressed, making the opinions of the court unanimous in sustaining the jurisdiction.
This brings us to a consideration of the merits.
It appears that Elijah Shelton during his life-time owned the north £ and the south of lot 23, in Beatty and Hawkins’s addition to Georgetown. He had his homestead on the south J, and resided there with his family. On the 12th day of May, 1872, he conveyed the said south £, together with all his household furniture, to the defendant King, upon certain trusts, for the benefit of his wife and children. The real consideration named in the deed was, natural love and affection. The bill alleges that at the time of executing this deed Shelton was indebted to the complainants, Qffutt & Co., and that the deed was wholly voluntary, and was made for the purpose of putting the property out of the reach of said complainants, Offutt & Go., and of such other persons as he might thereafter become indebted to, and for these reasons, it is averred, the conveyance is null and void. The bill *316 further alleges that the grantor has made reservations in the conveyance which are inconsistent with any valid title in the trustee, and that it is therefore void on its face. We will consider this last point first.
The provisions in the deed of trust that are claimed to render it invalid are, that the grantor reserves to himself the absolute right to sell and dispose of the trust-property in any manner that shall seem to him most for the' advantage of his wife and children, and that the trustee shall execute deeds to the purchaser and invest the purchase-moneys again, as he shall be directed by the said Shelton ; but the property, however varied, shall be iu the name of the trustee, for the benefit and use of the beneficiaries during the natural life of the grantor, and at his death the trust-funds are to be equally divided among his said wife and children. The ground for asking that the conveyance be declared void is this power reserved by the grantor as to the sale and investment of the trust-estate. It is a sufficient answer to this objection that the trust pervades the entire deed and attaches to the property, however changed. We cannot see how this reservation can invalidate a deed of trust. A man may convey his property upon any trusts that are not prohibited by law; and surely there is nothingunlawful in the mere fact that he retains a controlling voice iu the variation of the trust-estate for the benefit of minor children. If he had provided that upon the children coming of age the property should revert, or if he had settled the estate in trust for the joint benefit of himself and family during his life, and directed it then to be divided equally among his heirs, no one, I think, would contend that these limitations would defeat the deed. We read in the books that a man may covenant to staud seized of his own property in trust for the benefit of others, thus making himself his own trustee; and it is quite common in marriage - settlements for one of the parties to convey property in trust for the use of both, and in case of the death of the other party first, without issue, that the estate should revert to the grantor. It seems to us that a power to direct the variation -of the property would not be so important a reservation as those just stated, especially when the property, into whatever form it might be converted,was to be subject to precisely *317 the same trusts as those in the original declaration. We cannot discover any legal turpitude on the face of the instrument, and must therefore hold that it created a valid trust, unless defeated by actual and intentional fraud.
This brings us to the statement in the bill that the deed of trust was executed with intent not only to defeattexisting creditors, but also in contemplation of creating future debts. The statute of 13 Elizabeth, which is in force in this District, declares all conveyances void which are made with intent to defraud creditors, but by a proviso in the act itself it does not extend to bona-fide deeds made upon good consideration.
The decisions are very numerous which hold that mere voluntary conveyances are within the statute, and therefore void as to existing creditors, on the ground that a man must be just before he is generous, and the gift of his property to a stranger is held to be a fraud both upon the statute and the persons to whom he is indebted. A distinction is, however, made between existing and subsequent creditors; for as against the latter the conveyance is not void unless there is intentional fraud contemplated by the grantor in the creation of future debts. Chapin vs. Pease, 10 Conn., 69; Gunn vs. Butler, 18 Pick., 248; Heed vs. Livingston, 3 Johns. Ch. R., 481; 1 Am. Leading Cases, 52, 53; Sexton vs. Wheaton, 8 Wheaton, 229, 252.
Another well-recognized exception to the rule is that where a person is indebted in a small amount, and is doing a prosperous business, and is not embarrassed in his circumstances, he may make a voluntary conveyance in favor of a wife and children, and it cannot be impeached for want of consideration. This point has been expressly decided in the Supreme Court of the United States in the celebrated cases of Sexton vs. Wheaton and Wife, 8 Wheaton, 229-251, and Hinde's Lessee vs. Longworth, 11 Wheaton, 199. The first of these cases was brought by a subsequent creditor to have a conveyance declared void, and the other was brought by persons whose judgments were founded upon debts contracted prior to the alleged fraudulent conveyance, and the court, in view of the proofs, sustained the deeds in both cases, on the ground that natural love and affection is a good and valid consideration in a deed from a parent to a child.
*318 To the same effect are Salman vs. Bennett, 1 Conn., 525, 558; Verplank vs. Sterry, 12 Johns., 536; 1 Story Eq. Pl., sec. 355, and foot-note.
So far, therefore, as we are concerned, the doctrine of our own Supreme Court, even if it were not sustained by decisions elsewhere, would be conclusive upon us. Indeed, we doubt if a case can be found in which a court of equity has held such a deed void, in favor of creditors, unless aetual fraud is proven. Each individual case must depend on its own circumstances and the nature of the transaction.
In applying these principles to the case under consideration, it is quite clear that no frudulent intent is proven as to those complainants who became subsequent creditors. The deed was recorded the day after its date, and no secret trusts are shown. The record constructively was an open and notorious notice to those who dealt with the grantor that they were not to trust him on the faith of that property, and more than a year elapsed before the first transaction with either of them, nor is there a particle of proof that Shelton contemplated dealing with them when he made the conveyance; and 1 think it may be almost inferred from the circumstances that they sought him rather than he them to make the purchases upon which their alleged indebtedness arose. The court are of opinion that, as the deed of trust was not directed against subsequent creditors, it cannot be avoided by them.
The remaining question is, whether the deed was void as to Offutt & Co., who were the only creditors of Shelton at the time of its execution. We have seen that blood and affection, by repeated decisions, is a good consideration within the terms of the statute; so that the question is reduced to a matter of actual intention, provided the grantor was in a condition to make the conveyance. A reference to the circumstances which surrounded the transaction is therefore necessary.
It appears both from the pleadings and evidence that Shelton opened an account with Offutt & Co., who were merchants in Georgetown in the year 1850, which continued until his death. They supplied him with goods, and the account which they file in the testimony shows that at the date of the deed of trust there was a balance due them of $400. Shelton *319 died March 17,1854, nearly two years after he executed the conveyance. The whole amount of the account is over $7,000, covering a period of more than four years. Previous to the deed of trust he had paid from time to time various sums of money amounting in the aggregate to over $4,000, and after that time up to his death, his payments amounted to $3,078.35, leaving a balance still due of $311. Shelton was a colored man and had been emancipated, and for one of his bumble condition appears to have had unusual business qualities, and one of the members of the firm swears that it was on this account alone they gave him credit. He was doing a prosperous business, his indebtedness was not considerable, and he was not embarrassed at the time. He had other property, but its value then does not appear; nor is the value of his stock in trade at that time shown by the testimony. It seems, however, that he continued to trade with Offutt & Co. as before, making his purchases and payments from time to time, and within three months had paid more than the balance due at the time he executed the deed, and at the time of his death his payments exceeded many fold such indebtedness.
We think these facts repel the presumption of fraud in the execution of the deed. If an inference is to be drawn from the nature of the deed that it was to delay creditors, certainly that inference is successfully resisted by the steady and constant payments he is admitted to have made. When it is alleged that a conveyance is made in derogation of the rights of a single creditor, surely the payment of more than enough to liquidate that debt should remove the injurious imputation and relieve the transaction from the unfavorable inference. And when we see a series of these mutual dealings continued after the record of the deed, it could certainly only be by an overstrained assumption that we could eliminate fraud out of circumstances that are so entirely consistent with fair and honest traffic.
But it is said on the other side that Offutt & Co. in their bill elect to apply the payments made subsequent to the execution of the deed of trust to the items of subsequent indebtedness. The right of the complainants to make the application here claimed cannot be conceded without qual *320 ification. The principle that a creditor may apply payments in his discretion when the debtor fails to give any direction, is conceded, especially when there are different liabilities against the party making the payment, such as simple contract debts and specialties. The right of appropriation may be exercised by the creditor, unless the debtor points out the debt to which the application is to be made at the time he pays. But if the creditor makes the appropriation he cannot change it afterwards. Now, the payments made by Shelton from time to time were made to apply generally on the open account. This was such an appropriation as would not leave any particular item due, but only the balance after deducting the payments, and having exercised the right in this manner it can neither be recalled nor changed. The account-current-introduced in evidence does not form separate debts, but the items are blended into an entity when the creditor or debtor applies a general payment. Besides, we .think it would be inequitable to permit such an appropriation as is claimed now for the mere purpose of leaving an apparent indebtedness at the date of the deed of trust, in order to raise a presumption that a certain transaction of the debtor was fraudulent. It would be the act of the creditor really creating a case of fraud at his own option for the purpose of asking relief where no fraud existed ■; and it would effectuate an injustice to the motives and intentions of parties through the agency of a court of equity. We do not consider it our duty to encourage such labored management to raise a presumption of fraud. We are satisfied that the deed of trust is valid in law and fact.
There was a mass of testimony taken before the auditor, but in view of the conclusion we have announced respecting the validity of the trust-deed, it becomes irrelevant and presents no point the court ought to pass upon. It appears that Thomas Knowles, one of the firm of Offutt & C’o., was appointed administrator of the personal estate belonging to the-said Shelton, and soon after the commencement of this suit he went into possession of the premises embraced in the deed of trust. He claims he took such possession with the consent of King, the trustee, and of some or all of the heirs, and under an arrangement by which he was to collect the rent and prof *321 its of the premises until they should amount to enough to pay the indebtedness of the said Elijah Shelton, or until the court should decide upon the deed of trust. A great deal of testimony taken by the auditor wasin regard to therentalvalueof this house and lot. As there is no relief asked in the bill and none in the answer in regard to this matter, and as there is neither cross-bill nor stipulation upon the subject, the court is of opinion that no decree can be made in reference thereto, but the parties may be left to such other remedies as they may be advised to pursue.
There is no doubt but the complainants are entitled to have the north half of thelot, which was not embraced in the deed of trust, sold for the payment of debts due from the deceased. The order appealed from must be reversed, and the cause remitted with directions to order the sale of the north half of the lot, and to apply the proceeds to the payment of debts that shall be found due from the estate of the said Elijah Shelton.