JAMES H. HUNTINGTON AND ANOTHER *vs.* DAVID H. SHERMAN.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

It is necessary to the recovery by replevin of chattels wrongfully detained, under Gen. Statutes, § 1323, that the plaintiff should have a general or special property, with a right of immediate possession.

The defendant occupied a shop owned by the plaintiffs as their tenant, and agreed that a quantity of tools in the shop, of which a list was made, should be pledged to them for an overdue bill of rent, the tools to remain in the shop and be used by the defendant in his business. In replevin afterwards brought for the tools it was held that there was not the right to the immediate possession required by the statute.

The contract between the parties did not constitute an actual pledge of the tools, but was only an executory contract for a pledge, and a delivery was necessary to consummate it.

Where such a contract is supported by a sufficient consideration, damages may be recovered for its non-performance, and a court of equity might decree its specific performance.

But in the present case, the only consideration being a pre-existing debt, with no agreement for forbearance and no change in the condition of the parties, the contract could not have been enforced.

[Argued October 8th, 1890—decided May 25th, 1891.

REPLEVIN for a quantity of tools; brought to the Court of Common Pleas for Litchfield County, and tried to the

court before *Roraback, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiffs. The case is fully stated in the opinion.

*J. Huntington* and *A. D. Warner*, for the appellants

*W. Cothren*, for the appellee.

LOOMIS, J. This is an action of replevin to recover the possession of certain personal property, consisting of tools and machines used by the defendant in his business as tinner, and particularly described in the complaint. The facts found by the trial court, so far as they are material to our present discussion, are as follows:—

The plaintiffs were partners in business in the town of Woodbury, and as such partners were the owners of a certain shop building there. The defendant leased the shop from the plaintiffs and occupied it as a tinner's shop. The implements and chattels mentioned in the writ of replevin were owned by the defendant and his partner Eli Sherman, as a partnership doing business in Woodbury under the firm name of E. & D. H. Sherman.

In the latter part of August or early part of September, 1887, the defendant owed the plaintiffs the sum of $96 as rent for the shop. At this time all the implements and chattels mentioned in the complaint were in the shop, and continued in the possession and daily use of the defendant in his occupation as tinner, and were not out of his possession until they were taken by the plaintiffs by a writ of replevin in January, 1888.

On or about October 1st, 1887, the defendant agreed by parol to turn out to the plaintiffs the implements and chattels mentioned in the complaint, as security for the $96 above mentioned, but no delivery of them was made to or possession obtained by the plaintiffs.

The only writing or memorandum made between the parties in relation to the transfer of the articles was a list of them made by A. D. Warner, one of the plaintiffs, in the

presence and with the aid of the defendant. Several days after the memorandum was made, the defendant agreed with the plaintiffs that the articles should remain in the shop until the indebtedness was paid.

On the 7th day of November, 1887, the plaintiffs wrote the defendant a letter notifying him to quit possession of the shop. On or about the 8th of November the defendant did quit possession and removed the implements and chattels in question, together with other personal property, to his residence near by, where he carried on his business with the tools until they were replevied by the plaintiffs in January, 1888. He has never paid the debt of $96 to the plaintiffs.

The essential elements of this action are clearly defined in section 1323 of the General Statutes, where it is expressly provided that the action may be "maintained to recover any goods or chattels in which the plaintiff has a general or special property, with a right to their immediate possession, and which are wrongfully detained from him in any manner."

The important contention in this case relates to the plaintiffs' title and right to immediate possession. No general property is claimed by them, but only an interest and right to the possession as pledgees to secure a debt due them from the defendant. The latter however if established will suffice, for by law the right to the immediate possession may be in one person while the title is in another. This frequently arises in cases of bailments for special purposes.

There is a distinction of controlling importance in this case between an executory pledge contract and an actual pledge. The essentials of the contract are—(1) a subject matter; (2) a debt or engagement; (3) a meeting of the minds of the parties that the subject matter shall be handed over to secure the payment or fulfilment of the debt or engagement. But to consummate the contract and constitute the pledge there must be delivery. Until this takes place there is no pledge, but only an executory pledge contract. If such contract is supported by sufficient consideration each

party may hold the other bound to perform it. Damages may of course be recovered for non-performance, and in some cases doubtless equity might decree specific performance.

In the case at bar the court expressly finds that "all the implements and chattels mentioned in the plaintiffs' complaint were in the shop, and continued in the possession and daily use of the defendant in his occupation as a tinner, and the same were not out of his possession until they were taken by the plaintiffs by writ of replevin," etc. And again the court in another connection says—"No delivery of the goods was made to or possession obtained by the plaintiffs." This is conclusive that there was no actual delivery. Was there any constructive delivery?

The sole foundation for the latter is the finding that "several days after the memorandum was made, the defendant agreed with the plaintiff that the articles should remain in the shop until the indebtedness was paid." But the circumstances ordinarily furnishing a basis for constructive delivery are wholly wanting; the goods were not at sea, nor in a warehouse, nor were they too ponderous to be readily moved, nor were they placed within the power and control of the plaintiffs. It is true the plaintiffs owned the shop where the goods were, but the defendant as lessee held lawful possession, and how long he would or could so hold was uncertain. The pledge agreement contemplated no time for surrendering the possession of the shop to the plaintiffs.

There was formerly very little disagreement among the authorities in regard to the proposition that to complete a pledge the pledgee must take possession, and that to preserve the pledge he must retain possession, (unless a re-delivery to the pledgor was made for some temporary purpose.) The greater number of authorities still continue to support this doctrine. *Beeman* v. *Lawton*, 37 Maine, 543; *Collins* v. *Buck*, 63 id., 459; *Walcott* v. *Keith*, 22 N. Hamp., 196; *Bank of Macon* v. *Nelson*, 38 Geo., 391; *Nevan* v. *Roap*, 8 Iowa, 207; *Ceas* v. *Bramley*, 18 Hun, 187; *Propst* v. *Roseman*, 4 Jones Law, 130; *Homes* v. *Crane*, 2 Pick., 607; *Bonsey* v. *Amee*, 8 id., 236; *Walker* v. *Staples*, 5 Allen, 34; *Kimball* v. *Hil-*

*dreth,* 8 id., 167 ; *Foltier* v. *Schroder,* 19 Louis. An., 17 ; Story on Bailments, 9th ed., § 297 ; Jones on Pledges, §§ 23, 27 ; Edwards on Bailments, §§ 176, 209, 223. See a review of the cases in a note, 49 American Decisions, p. 730.

We have observed however for several years a growing laxity on the part of judges and jurists in the application of the principles of constructive pledge delivery, until now it must be confessed there are authorities of great weight and respectability that hold that, as between the parties themselves, an actual delivery may not be necessary, and that the possession may be regarded constructively where the contract places it. *Keiser* v. *Topping,* 72 Ill., 226 ; *Tuttle* v. *Robinson,* 78 id., 332 ; *Martin* v. *Reid,* 11 C. B. (N. S.,) 736 ; *Easton* v. *German American Bank,* 127 U. S. R., 536 ; Schouler on Bailments, 182 to 185.

The exigency of the present case does not require us to decide whether the pledgor himself may not in some cases be the agent of the pledgee to take and keep possession for the latter, or whether there may not be cases where the possession may be considered constructively where the contract places it, for it is manifest that there must be in all cases a valid executory contract to uphold the transaction and secure the thing pledged to the pledgee while there is no actual change of possession. In other words, the executory pledge contract must have force and vitality enough to compel an execution of it, to be good between the parties.

In the present case there was, in the absence of actual delivery, no valid consideration. The only consideration was a pre-existing debt, but there was no agreement for forbearance, no change at all in the debt, and no change in the condition of the plaintiffs or defendant. In other words, there was no benefit whatever to the promisor and no detriment or inconvenience to the promisee.

Had there been an actual delivery of the things pledged, even without an agreement for forbearance, then the new duties and obligations imposed on the pledgee in respect to the care of the pledge would have furnished a sufficient consideration to support the transaction.

We conclude therefore that there was no right in the plaintiffs to the immediate possession of the chattels replevied and consequently no error in the judgment complained of.

In this opinion the other judges concurred.