The Peoples Bank of Buffalo *vs.* The Aetna Indemnity Company (Theodore H. Macdonald, Insurance Commissioner, *vs.* The Aetna Indemnity Company).

\* Third Judicial District, New Haven, June Term, 1916.

Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

It is essential to the validity of a pledge, at least as against third persons, that the pledgee should have possession of the pledged property.

In the present case a lumber company, to enable it to obtain warehouse receipts upon its own lumber stored upon its own premises, to be

----

\* Transferred from the first judicial district.

Peoples Bank of Buffalo *v.* Aetna Indemnity Co.

used by it as collateral at its bank, leased its premises, pursuant to previous arrangement, to a warehousing company, and the latter thereupon issued its receipts, three in number, for the lumber aggregating about 1,750,000 feet, which it promised to deliver to the plaintiff bank, and turned these receipts, and also three bonds of the defendant indemnity company, over to the bank as collateral security for loans made to the lumber company, the amount of which exceeded the value of such lumber. No outward or visible change of possession occurred, nor was the lumber segregated, tagged or marked in any way, but one of the lumber company's employees was appointed by the warehousing company as its custodian. *Held* that inasmuch as no possession, actual or constructive, was taken by the warehousing company, the delivery of its warehouse receipts to the bank were ineffective to give it any lien upon the lumber.

Sixteen months or more after the issue of these warehouse receipts, the lumber company being insolvent and its president and manager having disappeared, the bank took possession of all the lumber then remaining on the premises, only 200,000 feet of which was there when the receipts were issued, and it did not appear that even this amount was the kind and grade of lumber described in such receipts. *Held* that the receipts gave the bank no right to take possession of lumber other than that described in them, after the lumber company had become insolvent and upon the eve of a receiver's appointment; for the delivery to the bank at that time of other lumber as security for previous advancements would have been void as an illegal preference under the Bankruptcy Act.

Within a week after the bank took possession of the lumber, which was worth $18,571, a receiver was appointed, and the plaintiff bank, after an action had been brought against it by the receiver, compromised its claim to a lien, and received therefor $4,571. *Held* that in making this compromise the bank did not, as the indemnity company contended, throw away a valid lien which the bank had upon the lumber, and thus release the indemnity company from liability.

The defendant indemnity company had agreed with the bank to make good any loss that might accrue to it through the negligence or dishonesty of the warehousing company or its custodian. *Held* that the bank's loss of lien occurred either through the negligence of the warehouse company in not taking possession of the lumber described in the receipts at the time they were issued, or through its dishonesty in stating in the receipts that it had received the lumber; and that in either of these events the indemnity company was liable.

In this State the rule in receivership proceedings to wind up an insolvent corporation—unlike that in some other jurisdictions—is that the

creditor must deduct the value of his security from the amount of his claim, and take his dividend upon the balance only, unless he elects to surrender the security.

The case of *Bank of Buffalo* v. *Aetna Indemnity Co.*, 90 Conn. 415, distinguished.

Argued June 15th—decided July 27th, 1916.

INTERVENING APPLICATION in receivership proceedings pending in the Superior Court in Hartford County, by an alleged creditor of the defendant company, praying for the allowance of a claim of $28,750, and referred to a committee who found and reported the facts; the court, *Gager, J.*, accepted the report of the committee and allowed the claim to the amount of $15,386, and from this judgment both parties appealed. *No error upon either appeal.*

*J. Birney Tuttle* and *Ralph H. Clark*, for the appellant (Receiver of the Aetna Indemnity Company, defendant).

*Lyman M. Bass* of Buffalo, New York, with whom was *Alvan Waldo Hyde*, for the appellant (plaintiff).

THAYER, J.  The Aetna Indemnity Company is in the hands of a receiver appointed by the Superior Court. The Peoples Bank of Buffalo presented to the receiver a claim against the Indemnity Company which he disallowed.  This is an application by the bank to the court, asking that the claim be allowed.

The claim is based upon the alleged breach of its bond of indemnity given by the company to the bank to indemnify it against any loss that might accrue to it through the negligence or dishonesty of the American Warehousing Company of Buffalo, according to three warehouse receipts issued by it and held by the bank as collateral security for moneys advanced by the bank

to the Leslie Lumber Company of Buffalo. These warehouse receipts had been issued on June 9th, 1909, pursuant to an arrangement between the Lumber Company and the Warehousing Company, whereby the latter was to issue the receipts for lumber owned by and stored upon the premises of the Lumber Company. The Lumber Company executed a lease of its premises to the Warehousing Company and the latter appointed one of the former's employees its custodian. The receipts were each for a definite number of feet of lumber, amounting in all to 1,750,000 feet, which the Warehousing Company acknowledged to have received from the Lumber Company and agreed to deliver to the Peoples Bank of Buffalo upon payment of storage and other charges. At the time the Lumber Company delivered these receipts to the bank as collateral security for its obligations, the latter was shown the agreement and lease between the Lumber Company and the Warehousing Company. The purpose of the arrangement between the companies was to enable the Lumber Company to obtain warehouse receipts upon its own lumber stored upon its own premises to be used by it as collateral at its bank. This is what is called "field storage warehousing" and, when properly conducted, is legitimate. *Bank of Buffalo* v. *Aetna Indemnity Co.,* 90 Conn. 415, 421, 97 Atl. 332, 334.

The Warehousing Company did not take actual possession of the lumber covered by the warehouse receipts, and did not segregate the same or mark it, or in any way designate the particular lumber subject to its several receipts prior to October 25th, 1910, but the same continued to be mingled with the other lumber of the Lumber Company in its yards. The Lumber Company, with the knowledge of the Warehousing Company, purchased and piled lumber in its yard and sold it from time to time, sales being made indiscrim-

inately from all piles in the yard, so that on October 25th, 1910, there was only 200,000 feet of lumber in the yard which was there when the warehouse receipts were issued.

On October 25th, 1910, the Lumber Company being insolvent and its president having disappeared, its obligations to the bank for which the warehouse receipts were collateral not having been paid, the bank took possession of all the lumber then in the Lumber Company's yard. On the 31st of October, 1910, a receiver of the Lumber Company was appointed by the United States District Court for the Western District of New York. Pursuant to an agreement between him and the Warehouse Company, the Indemnity Company and the bank, and without prejudice to any, the lumber in the possession of the bank was sold for $18,571. The receiver afterward brought an action to set aside any liens thereon, and to recover the amount for which the lumber sold. With the approval of the United States Court this suit was compromised, without prejudice, by the parties who had consented to the sale, the bank receiving as its share $4,571.58. The 1,750,000 feet of lumber called for by the warehouse receipts was worth on October 29th, 1910, $19,731. The court allowed the claimant bank this amount, with interest, less the $4,571.58 received by it from the proceeds of the sale of the lumber of the Leslie Company.

The receiver of the Aetna Indemnity Company claims that the bank had a valid lien upon the lumber covered by the warehouse receipts, which it threw away by the compromise, and that the court was wrong in allowing any part of its claim. The Peoples Bank of Buffalo contends that it was entitled to have its claim for the full value of the lumber covered by the warehouse receipts allowed, and that the court was wrong in deducting therefrom the amount which it received from the proceeds of the sale under the compromise.

If the statement contained in the warehouse receipts which the bank received from the Lumber Company had been true, there would have existed a valid pledge of the lumber to the bank and by the delivery of the receipts the bank would have been placed in constructive possession of the lumber. The law requires that the pledgee shall have possession of the pledged property, and a pledge good against third persons cannot exist without such possession. *Security Warehousing Co.* v. *Hand*, 206 U. S. 415, 421, 27 Sup. Ct. 720; *Casey* v. *Cavaroc*, 96 U. S. 467, 486; *Huntington* v. *Sherman*, 60 Conn. 463, 466, 22 Atl. 769. Such possession gives the pledgee a lien upon the property pledged, and without possession there is no pledge and no lien. In the present case there was no possession either actual or constructive. The bailment purports to be to the warehouseman. The finding is that the Warehousing Company did not take actual possession of the lumber, and it shows that the lumber described in the receipts was left in the possession of the pledgor without segregation from the other lumber of the pledgor, and without being tagged or marked so as to distinguish it from such other lumber, and was dealt with and sold by the pledgor as his own with the knowledge of the Warehousing Company. There was nothing after the pretended warehousing of the lumber to indicate to the Lumber Company's purchasers or creditors that the pledgor was not the unconditional owner of it. While under the system of field storage warehousing, the warehoused goods may be stored upon the premises of the pledgor, they must be so segregated from his remaining goods, or so marked or tagged, as to distinguish them from such other goods and give third parties notice of the pledge. *American Can Co.* v. *Erie Preserving Co.*, 171 Fed. Rep. 540, 546, Id. 183 Fed. Rep. 96, 98. It is clear, therefore, that the bank had no lien prior to October 25th, 1910,

upon the lumber described in the warehouse receipts. On that date, the Lumber Company being insolvent and its president and manager having disappeared, the bank took possession of all the lumber remaining in its yard. The receiver claims that by this proceeding the bank exercised a pre-existing right to take actual possession of the property, and thus established a lien upon the property pledged which extended back to the original contract of bailment and so was valid against the receiver of the Lumber Company and its creditors whom he represented. The finding does not show that the lumber of which the bank took possession was the lumber which was described in the warehouse receipts by the delivery of which it is claimed to have been pledged to the bank; but, on the contrary, it is found that of the lumber in the yards taken by the bank there was "only about 200,000 feet" which was in the yard at the time the receipts were issued, and it is not found that this was lumber of the kind or grade of that described in the warehouse receipts. It cannot fairly be claimed, therefore, that the lumber taken by the bank was in whole or in part that which, sixteen months before, had been acknowledged by the Warehousing Company to have been received by it from the Lumber Company.

It is to protect creditors from the danger of such a taking as this, on the eve of the pledgor's bankruptcy or insolvency, that the law requires that in field storage warehousing, pledged goods shall be placed in the actual possession of the warehouseman on the premises of the pledgor, or shall be so segregated and tagged or marked as to give notice to third parties of the bailment. By the Warehousing Act of the State of New York, which took effect on July 25th, 1907 (New York Laws, 1907, Vol. 2, Chap. 732), re-enacted as Article 9 of the General Business Law of the State of New York (being Chap-

ter 25 of the Laws of 1909, Vol. 2), it is provided (Chapter 25, § 108, p. 1201) that warehousemen shall keep unfungible goods so far separate from the goods of other depositors, and from other goods of the same· depositor for which a separate receipt has been issued, as to permit the identification of the goods. And § 134 (p. 1208) of the same chapter, makes it a crime in a warehouseman to issue a receipt knowing that the goods for which the receipt is issued have not been actually received or are not under his actual control at ·the time of issuing it. Section 108 is applicable to cases of ordinary warehousing as well as to field storage warehousing, but the provision calling for the segregation of the warehoused property applies with greater reason in the latter case, where the goods are warehoused upon the premises of the bailor, than in the former, where they are ordinarily upon premises of the bailee or those controlled by him. The importance placed by the law upon possession by the warehouseman of the pledged goods at the time the receipt is given, is shown by the fact that it is made a crime to issue the receipt unless the warehouseman has possession.

The warehouse receipts here in question gave the bank no lien upon the lumber therein mentioned, because the Warehousing Company neglected to take possession of it; and they of course gave the bank no right to take possession under them of other lumber than that described in them after the Lumber Company had become insolvent and a receiver was about to be appointed. The delivery to it at that time of other lumber as a security for its previous advancements to the Lumber Company would have been void as a preference. The receiver of the Lumber Company, appointed within a week after the bank obtained possession of the lumber, represented not only the corporation but its creditors. High on Receivers (4th Ed.) § 314; *Curtis* v. *Lewis,* 74

Conn. 367, 370, 50 Atl. 878. He could therefore successfully maintain his action against the bank for the proceeds of the lumber taken by it, and the compromise of that action by the bank, without prejudice, was not the throwing away of any lien upon the property.

The Buffalo Bank's claim against the receiver of the Aetna Indemnity Company, recently decided by us, *Bank of Buffalo* v. *Aetna Indemnity Co.*, 90 Conn. 415, 97 Atl. 332, differed from the present case in several particulars. The warehouse receipts in that case were issued in January, 1907, before the Warehousing Act of the State of New York above referred to went into effect, and the Act provides that its provisions shall not apply to receipts made prior to October 1st, 1907. The merchandise warehoused in that case was fungible, so that the grain taken by the bank was the same which it would have taken had the grain been properly warehoused. There was in that case an attempt to indicate by tags or marks that the pledgor had a lien upon grain in the warehouse. This we held to be insufficient, but held that under the facts in that case an inchoate lien existed in favor of the bank which it could and did perfect by taking possession of the grain attempted to be warehoused. None of the circumstances mentioned exist in the present case.

In this case the bank lost its lien through the Warehousing Company's neglect to take possession of the lumber described in the receipts at the time of issuing them, or through its dishonesty in stating in the receipts that it had received the lumber. As stated by the trial court, it makes no difference in this case whether it was through its negligence or through its dishonesty that the lumber was lost to the bank. The bonds upon which the bank's claim is based contain a promise to indemnify the bank for its loss either through the negligence or the dishonesty of the warehouseman.

The bank had knowledge of the agreement and lease between the Lumber Company and the Warehousing Company providing for field storage warehousing of the former's lumber, and might properly rely, and did rely, upon them and the statements contained in the receipts, that the Warehousing Company had received possession of the 1,750,000 feet of lumber covered by the receipts, and in reliance upon them it advanced the Lumber Company more than $25,000. Except to the extent of $1,100, this has never been paid to it by the maker or indorser of the note which represents the bank's advancements.

The Peoples Bank of Buffalo was entitled to have its claim against the receiver of the Indemnity Company's estate allowed to the amount of its loss through the Warehouse Company's negligence or dishonesty. The receiver conceded that if the bank was entitled to a judgment it was entitled to the amount for which the judgment was given, namely; $15,386.33, the value of the lumber described in the receipts at the date of the Lumber Company receivership, with interest, less the amount ($4,571.58) received by the bank on the compromise of the action which was brought against it by the receiver.

The bank appeals from the court's action in deducting from its claim for the full value of the lumber the sum received by it in compromise of the receiver's action. It attempts to sustain its position by an appeal to the rule, followed by courts of equity in some jurisdictions in administering the estates of insolvents, that a creditor of the insolvent is not bound to deduct from his claim against the debtor moneys received from collaterals or from independent claims, but may prove his full claim without deduction and receive dividends thereon until the full amount of his original claim is paid. This is not now the rule in this State. *In re*

*Waddell-Entz Co.*, 67 Conn. 324, 337, 35 Atl. 257. Under our Insolvent Act the creditor can only prove his claim for the amount of it less the value of the security, unless he surrenders the security. And in the case last cited it is held that in a receivership proceeding to wind up an insolvent corporation the rule is the same. In the action in the United States Court in New York, which the bank compromised, it claimed to hold the lumber and the proceeds from the sale of it, as collateral security under the warehouse receipts, and by virtue of its claim it received $4,571.58. The Aetna Indemnity Company was a party to the compromise. The bank cannot now equitably claim, and we understand does not claim, that the money received by it under the compromise is not to be treated as the proceeds of collateral held by it under the warehouse receipts. This being so, clearly the amount received reduced its loss due to the negligence or dishonesty of the Warehouse Company, and it is only for the loss as so reduced that the Aetna Indemnity Company made itself responsible by the bonds in question.

There is no error upon either appeal.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.