M. ITZKOWITZ & SONS, INC. *v.* VICTOR L. SANTORELLI ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued June 4—decided July 15, 1941.

*Theodore I. Koskoff,* for the appellant (plaintiff).

*Samuel E. Friedman,* for the appellees (defendants).

JENNINGS, J. The plaintiff brought this action of replevin to recover certain sewing machines and equipment to which it claimed the right of possession under a conditional bill of sale to Beckley Needlecraft, Inc. The named defendant is a deputy sheriff for Fairfield County who held the property under a writ of attachment issued on behalf of the Park City Binding Company, Inc., the other defendant. An answer denying the allegations of the complaint and containing nine special defenses was filed, but it will be necessary to consider only two of the issues raised: (1) That no default existed under the contract entitling the plaintiff to possession and (2) that the plaintiff conspired with George B. Karson to conceal the property replevied from the creditors of the Karson Products Company, controlled by Karson. These defenses were demurred to but they obviously raised questions of fact and the demurrers were correctly overruled. As the trial court said in overruling the demurrer to the latter defense, its allegations "go to the root and substance of the whole matter and nothing by way of technical pleadings should be permitted to interfere with the determination by the trial court of questions of fact which may be determinative of the whole matter."

The factual situation was extremely complicated, the exhibits including no less than seven chattel mortgages of this machinery and in addition four contracts and agreements relating thereto. The facts found essential to a determination of the legal issues are as

follows: The plaintiff is a New York corporation engaged in the business of manufacturing and selling sewing machines and factory equipment. The Stewart Ashley Corporation and Karson Products Corporation were both located in Bridgeport and were controlled by George B. Karson. Both concerns had bought sewing machines and equipment from the plaintiff and others. The Beckley Needlecraft Corporation was another corporation controlled by Karson, located in Stamford. All three of these corporations were officered by dummies and were used by Karson for the purpose of fraudulently incumbering his property and concealing it from creditors by means of transfers from place to place and from one corporation to the other without consideration.

In November, 1938, a transfer of a considerable number of machines was effected from Karson Products to Beckley Needlecraft without consideration or knowledge of creditors or employees. On January 12, 1939, in the night season, Karson, with the connivance and assistance of the plaintiff, loaded all the remaining machinery, merchandise and stock which was on the premises of Karson Products onto a truck owned by the plaintiff. On January 14th, this load, in its original condition, was delivered to Beckley Needlecraft at Stamford. On January 13, 1939, Papini, an employee of Karson and dummy president of Beckley Needlecraft, and Samuel Itzkowitz, president of the plaintiff, met in the office of Joseph Clapper, Itzkowitz's attorney, in New York and executed the conditional bill of sale on which the plaintiff relies. Among its recitals was the price, stated to be $3724.25 payable as follows: "Checks in the sum of $424.25, subject to collection, as down payment"; the balance in biweekly payments, starting February 15, 1939. This was recorded January 17, 1939. The date of the re-

plevin writ was February 3, 1939, and, after the re-plevin, the machines were again placed in the posses-sion of George B. Karson operating in New York under the name of Donald Products Corporation. He still has them.

On January 17, 1939, the named defendant attached the property covered by the conditional bill of sale in a suit of the Park City Binding Company against Karson Products and Beckley Needlecraft which, on February 24, 1939, resulted in a plaintiff's judgment against both defendants. The plaintiff attacked the finding in numerous respects but is entitled to no cor-rections material to this appeal. On these facts the trial court concluded that the plaintiff had no title to the property as against either defendant.

Replevin is a purely statutory remedy. *Belknap Savings Bank* v. *Robinson,* 66 Conn. 542, 547, 34 Atl. 495. The case just cited rehearses its legislative his-tory to 1895. The current provisions are found in Gen-eral Statutes, Chapter 314. The plaintiff in replevin must prevail by the strength of his title rather than by the weakness of the defendant's. General Statutes, § 5956. 23 R.C.L. 866. He must show an immediate right to possession of the property at the time of bringing the action. General Statutes, §§ 5942, 5944; *Mead* v. *Johnson,* 54 Conn. 317, 318, 7 Atl. 718; *Hunt-ington* v. *Sherman,* 60 Conn. 463, 465, 22 Atl. 769; *McNamara* v. *Lyon,* 69 Conn. 447, 451, 37 Atl. 981; 54 C. J. 436.

The burden of proof was upon the plaintiff to show that there had been a default under the conditional bill of sale. As the first note, by its terms, would not be due until February 15th, which was after the date when the replevin action was begun, no default on that account would avail the plaintiff. The only de-fault which could avail, would be with reference to

the checks which the agreement recited were given. The plaintiff having failed to prove that any such checks were given, there is no basis upon which he could claim a default in a failure to pay them. It follows that the plaintiff failed to prove any breach of condition giving it the right of immediate possession of the property at the time the replevin action was brought.

As to the defense of conspiracy to defraud, the defendants' attachment gave them a direct and positive interest in the property. Glenn, Law of Fraudulent Conveyances, p. 55. They now have a judgment. The plaintiff opposes to this right of the defendants the conditional sales contract which, the court has found, was one of the means used by it to enable Karson to defraud his creditors. In the interest of brevity, the facts found have been briefly summarized above but if fully stated they would even more clearly show a general scheme to defraud of which the execution of the conditional sales agreement was but one necessary step. This situation outrages one's sense of decency and the plaintiff's brief does not improve matters. It says, in answer to this claim of the defendants: "Assuming that the plaintiff were guilty of fraud, he is still the chattel-mortgagee and conditional-vendor of the equipment. . . . It is true that the plaintiff could be sued in a fraud action, but it does not affect its rights as a conditional-vendor." While any litigant is entitled to his day in court, if he takes this position he assumes a heavy burden. This court is not engaged in assisting such litigants beyond protecting such clear legal rights as they establish.

As was said in *Phalen* v. *Clark*, 19 Conn. 421, 432; "We suppose it to be a well settled doctrine, that, if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover it." See also,

*Gest* v. *Gest,* 117 Conn. 289, 296, 167 Atl. 909; *Tator* v. *Valden,* 124 Conn. 96, 101, 198 Atl. 169; 17 C. J. S. 656. The plaintiff must rely on its conditional sale contract for its right to recover. This, as has been pointed out, was a part of a general scheme to bring about an unlawful result and, as such, was unlawful, 6 Williston, Contracts (Rev. Ed.) § 1752, and against public policy. Id. Vol. 3, § 811; id. Vol. 6, § 1739. While *Chapin* v. *Pease,* 10 Conn. 69, involved a re-transfer by a fraudulent grantee to a fraudulent grantor, the same principle applies and the transfer was set aside at the suit of a creditor of the grantee.

Either defense is adequate to support the judgment for the defendants. It is unnecessary to consider the rulings on evidence since they relate only to damages.

There is no error.

In this opinion the other judges concurred.