LAWRENCE H. HANSEL *v.* THE HARTFORD-CONNECTICUT TRUST COMPANY

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 5—decided October 24, 1946

*Lawrence A. Howard* and *George H. Cohen,* with whom, on the brief, was *Naaman Cohen,* for the appellant (defendant).

*John Buckley,* for the appellee (plaintiff).

MALTBIE, C. J. In this action, the plaintiff claims damages from the defendant bank on the ground that in redelivering to Robert D. Hastings certain stock he had deposited with it as collateral security for loans it had made to him it disregarded certain rights as regards that stock acquired by the plaintiff by an assignment from the trustees under the will of Harriet D. Hansel of which the defendant had notice. From judgment for the plaintiff the defendant has appealed.

Mrs. Hansel, in her will, gave all the residue of her estate to trustees with direction to divide it into four equal parts, one of which was to be held for the benefit of each of her sons, two of whom were Robert D. Hastings and the plaintiff; she further provided that the value of such of her securities as had been delivered to any of her sons during her life should be included in determining his share, that these securities should be deemed to have been transferred to him in absolute title and that, should this result in any son's receiving more than his share, he should be held indebted to the extent of the excess in value to the other three trusts in equal proportions; and she appointed, as trustees, Hastings and the Hartford National Bank and Trust Company, hereafter referred to as the Hartford bank. The testatrix, before her death, had delivered to Hastings certain shares of stock and he had deposited them with the defendant as collateral for a loan. As provided in the will, these stocks were distributed to him in absolute title. Other property was also distributed to him and the result was that he received $98,640.18 more than his share. The testatrix, before her death, had delivered to another son certain shares of stock which he had deposited in a bank as collateral for a loan; under the provisions of the will, these were distributed to him in absolute title; and their value almost equalled the amount of his fourth share of the residue. Consequently, there was distributed to the trustees for the benefit of each of the testatrix' other two sons, one of whom is the plaintiff, one-half of the amount due from Hastings on account of the excess in value of the property distributed to him above his proper share.

The distribution was dated February 24, 1937. Hastings signed two other instruments bearing the same date. One was addressed to the trustees as representing the interest of the plaintiff and of the other son for whose benefit the indebtedness was distributed to them; it acknowledged that Hastings had received property in excess of his share to the amount stated in the distribution, that he was indebted to each of the trusts to the extent of one-half of that amount, and that the securities earned a certain rate of income; and the instrument contained an agreement by Hastings to pay interest at that rate on the indebtedness or any amount to which it might be reduced for a period of one and one-half years. The other instrument, which is in evidence as exhibit E, and which is quoted in the footnote,[1] stated in part: "I, Robert Day Hastings

[1] I, ROBERT DAY HASTINGS, hereby assign to the HARTFORD NATIONAL BANK AND TRUST COMPANY and ROBERT DAY HASTINGS as Trustees under the will of Harriet D. Hansel my equity (meaning thereby the value of the securities in excess of the amount due the Hartford-Connecticut Trust Company, or any funds received from the sale of such securities after the payment in full of the indebtedness to the Hartford-Connecticut Trust Company) in the collateral pledged to secure my loan at the Hartford-Connecticut Trust Company. This assignment is in all ways subject to the prior lien of the Hartford-Connecticut Trust Company, but I agree hereby that up to the limit of my indebtedness to the two trust funds ($98,640.-18) the Trustees have a second lien on the securities bequeathed to me under the will of my mother and pledged for my indebtedness to said Hartford-Connecticut Trust Company. The right is reserved to me to sell any of such securities from time to time and to pay the proceeds against said loan from said Hartford-Connecticut Trust Company or to reinvest such proceeds (subject to the approval of the Hartford-Connecticut Trust Company and the Hartford National Bank and Trust Company, Trustee), such reinvestments to be subject to the original pledge to said Hartford-Connecticut Trust Company and to the pledge of the equity therein to the trust funds as aforesaid. I agree not to withdraw any securities pledged as collateral

hereby assign" to the trustees "my equity (meaning thereby the value of the securities in excess of the amount due" the defendant "or any funds received from the sale of such securities after payment in full of the indebtedness to" the defendant) "in the collateral pledged to secure my loan" from the defendant. "This assignment is in all ways subject to the prior lien of" the defendant, "but I agree hereby that up to the limit of my indebtedness to the two trust funds ($98,640.18) the Trustees have a second lien on the securities bequeathed to me under the will of my mother and pledged for my indebtedness to" the defendant. The instrument went on to provide that Hastings reserved the right to sell any of the securities in order to use the proceeds to reduce the loan or to reinvest them, subject to the approval of the defendant and the Hartford bank, "such reinvestment to be subject to the original pledge to" the defendant "and to the pledge of the equity therein to the trust funds as aforesaid"; and the document concluded with an agreement by Hastings not to withdraw the securities pledged as collateral for his loan or any cash resulting from their sale for his "individual use" until his indebtedness to the two trust funds had been paid in full. A copy of exhibit E was filed with the defendant on March 19, 1937.

While not found by the referee, it is alleged in the complaint, not denied in the answer and apparently assumed by both parties that on June 16, 1937, the trustees assigned to the plaintiff all their right, title and interest in or to the amount due from Hastings

---

for my loan or any cash resulting from any sale of such securities for my individual use until my indebtedness to the two trust funds has been paid in full.

to them as trustees for the plaintiff. Under date of July 7, 1938, an agreement, exhibit F, was made by the plaintiff, Hastings and the trustees which stated that the "Assignment of Equity," a copy of which was attached, "shall be construed and interpreted in such manner as to permit" Hastings "to increase his bank loan" with the defendant from time to time for certain purposes specified in the succeeding paragraphs until his indebtedness as it appeared in "the Statement" signed by him on February 24, 1937, a copy of which was also attached, should be paid in full, and that none of the uses specified should be considered to be for the "individual use" of Hastings as that phrase was used in the "Assignment of Equity"; and the instrument proceeded with an agreement that the "time of expiration" mentioned in the acknowledgment of the indebtedness should be extended from August 24, 1938, to August 24, 1940, that interest was to be paid at the rate specified in the acknowledgment and that, except with the approval of the Hartford bank and the defendant, Hastings' loans from the defendant should not be increased by the uses permitted beyond a certain named sum plus the amount by which the loans might be reduced by funds received from an outside source, except that, if the loans were reduced by the sale of collateral securing them, Hastings could borrow sums from the defendant with which to purchase other security to be used "as further collateral for his indebtedness to" the defendant, the plaintiff and the trustees as representing the interest of the other son to the trust for whom Hastings was indebted. The defendant had no knowledge of this agreement.

The complaint is specifically based upon the

ground that the defendant unlawfully redelivered to Hastings some of the stock it held as collateral when exhibit E was executed. Absolute title to that stock had been vested in him by the distribution. Such rights to it as the plaintiff can claim must rest upon the provisions of exhibit E. That instrument begins with a purported assignment of the equity in the stock and, had it stopped there, it may well be that the effect would have been to transfer all the rights Hastings had as to it; *Tracy* v. *Hammond Co.,* 5 App. Div. 39, 40 N. Y. S. 30; and one of these rights would be to have the stock returned to him when the indebtedness for which it was held as collateral had been satisfied. *Dime Savings Bank of Hartford* v. *Bragaw,* 125 Conn. 281, 285, 4 A. 2d 924. The instrument, however, goes on to define the word "equity" as used in it, stating its meaning to be either "the value of the securities in excess of the amount due" the defendant or any funds received on their sale after the payment in full of that indebtedness. The first portion of this definition does not purport to assign all Hastings' interest in the stock and it cannot be construed as an assignment of an interest in it equal to the excess of its value above Hastings' debt. An assignment to be effective must transfer some chose in action or thing which actually or potentially exists as a specific entity or some definite part thereof. *Aetna Trust & Savings Co.* v. *Nackenhorst,* 188 Ind. 621, 630, 122 N.E. 421, 123 N.E. 353, 125 N.E. 213; *First National Bank of Wellsburg* v. *Kimberlands,* 16 W.Va. 555, 588; 6 C.J.S. 1054, § 9; and see *Barker Piano Co.* v. *Commercial Security Co.,* 93 Conn. 129, 137, 105 A. 328; *Bassett* v. *City Bank & Trust Co.,* 116 Conn. 617, 631, 165 A. 557. The defendant had the right

to hold all the stock until Hastings' indebtedness to it was satisfied or the stock was disposed of in some authorized manner. The purported assignment of the "value" of the stock in excess of the indebtedness could not be held to transfer a present right to recover that excess for no right of that kind existed; and any potential right to recover the excess would depend upon the realization by the sale of the stock of an amount more than sufficient to satisfy the indebtedness, a contingency which never occurred. See *Winslow* v. *Fletcher*, 53 Conn. 390, 394, 4 A. 250. Indeed it could not have been the intention of the parties to transfer such a right, for that situation is expressly covered by the second portion of the definition. The excess value of the stock above the indebtedness which the first portion of the definition purported to assign was not such an existing or potential entity as was capable of assignment. The second portion of the definition would have been at most an assignment of money realized upon the sale of the stock and could give no right to claim the return of the stock itself.

In exhibit E, Hastings further agreed that up to the limit of his indebtedness to the two trust funds the trustees should have a "second lien" on the stock subject to the prior rights of the defendant. Standing by itself, this provision was sufficient to create an equitable lien. To quote Judge Story, writing the opinion in *Mitchell* v. *Winslow*, 2 Story 630, 644, 17 Fed. Cas. No. 9673 at 533: "It seems to me a clear result of all the authorities, that wherever the parties, by their contract, intended to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor, or not, or if personal property, wheth-

er it is then in esse or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto, under him, either voluntarily, or with notice, or in bankruptcy." See *Pierce* v. *National Bank of Commerce*, 268 F. 487, 494; *In re Interborough Consol. Corporation*, 288 F. 334, 349; 3 Pomeroy, Eq. Jur. (4th Ed.) § 1235. The use of the word "pledge" in the provision of exhibit E that if the collateral was reinvested the securities which were substituted would be subject to "the original pledge" to the defendant "and to the pledge of the equity therein to the trust funds as aforesaid" is not sufficient to indicate an intent to pledge the stock as distinct from the purported creation of the lien; the word "pledge" was evidently used to describe in a general way the rights of the trustees under the lien. Indeed to construe it otherwise would create a clear inconsistency in the instrument, for, as we shall point out, a lien creates only a charge upon its subject matter and in itself gives no right of possession, whereas a pledge confers a special property with a right of possession, actual or constructive. *Saposnick* v. *Kenig*, 121 Conn. 253, 256, 184 A. 584; *Peoples Bank of Buffalo* v. *Aetna Indemnity Co.*, 91 Conn. 57, 62, 98 A. 353. Under the former, the defendant would have the right, unless qualified by other provisions in the instrument, to return the stock to Hastings on satisfaction of its debt; under the latter, when the debt was paid, if we assume that notice of the agreement to the defendant was sufficient to constitute it a holder of the stock under pledge to the plaintiff, it would be under an obligation to continue to hold it or deliver

it to the plaintiff. *Pierce* v. *National Bank of Commerce,* supra, 492; 49 C.J. 916, 917. The whole tenor of the instrument makes it clear that the parties did not intend to convey any title, legal or equitable, to the stock or any part of it or to pledge it but evinces an intent that, subject to the prior rights of the defendant, the stock should serve as security for Hastings' indebtedness to the trust funds. See *Connecticut Co.* v. *New York, N. H. & H. R. Co.,* 94 Conn. 13, 33, 107 A. 646. We construe exhibit E, therefore, as amounting to no more than the creation of an equitable lien upon the stock.

The defendant claims that exhibit E was without consideration. The report of the referee is silent as to the circumstances under which the distribution was made and Hastings' acknowledgment of debt and exhibit E were executed. The distribution in fact gave to Hastings property greatly in excess of his right to a fourth share in his mother's estate. That distribution, Hastings' acknowledgment of indebtedness, and exhibit E all bear the same date and are to be construed together. The provision in the acknowledgment that Hastings will pay interest on his indebtedness to the trust funds for a period of one and one-half years, particularly when construed in the light of the provision in the agreement of July 7, 1938, that "the time of expiration mentioned in the statement of indebtedness" is to be extended until August 24, 1940, amounts to an implied agreement that Hastings' indebtedness to the trust funds need not be paid until the extension had terminated. See *Lockwood* v. *Crawford,* 18 Conn. 361, 372; *Beardsley* v. *Hawes,* 71 Conn. 39, 40 A. 1043. These facts strongly suggest consent by the trustees and others interested to the distribution of an excess

portion of the estate to Hastings and an extension of time in which he might pay his indebtedness to the trust funds in return for his acknowledgment of his indebtedness and his promise to pay interest. Certainly these circumstances point to an ample consideration to support exhibit E, and in the absence of any finding as to the circumstances under which the documents were executed or that exhibit E lacked consideration we cannot hold as matter of law that it did.

Before proceeding with a discussion of the effect on the rights of the parties resulting from the creation of a lien, we take note of a claim made by the defendant that it was the intent of the parties under the instruments, particularly exhibit F, to permit Hastings to use the collateral for trading purposes in the expectation or hope that thereby he would make a profit sufficient to enable him to pay off his indebtedness to the trusts. Undoubtedly exhibit F would give him a very broad power to withdraw collateral, sell it and purchase other securities; but the trustees and the plaintiff may well have relied on an assumption that the defendant would at all times insist on having collateral ample to cover Hastings' indebtedness to it. No such intent as the defendant claims finds expression in the instrument, and a conclusion that it existed would be at most an inference of fact for the trier to draw; but the report of the referee does not find that it existed. Even if it did, it would give no right to the defendant to deal with the securities in its hands otherwise than it had authority to do in accordance with the intent expressed in the two instruments. To give effect to the intent claimed, which, if it existed, was entirely dehors the instruments, would be to depart

from the well-established rule of law that the effect of a written instrument is determined by the intent expressed in it, not by an extraneous intent which a court may believe to have been in the minds of the parties. *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427.

As Justice Story goes on to point out in *Mitchell* v. *Winslow,* supra, it is quite in keeping with the nature of an equitable lien that the property continue in the possession of the owner or anyone who is holding it for him. An equitable lien creates merely a charge upon the property and when the person entitled to it is not in possession of that property, he has no right to obtain possession from another unless by virtue of some authority to do so expressly granted to him; his remedy to enforce the lien is by a proceeding in equity to bring about its sale and the application of the proceeds to the satisfaction of the obligation secured, or, in some other manner, by order of the court, to make the property available for the discharge of that debt. *Oppenheimer* v. *Szulerecki,* 297 Ill. 81, 88, 130 N. E. 325; *Jones* v. *Carpenter,* 90 Fla. 407, 412, 106 So. 127; *Bank of Florala* v. *Smith,* 11 Ala. App. 358, 360, 66 So. 832; 3 Pomeroy, op. cit., p. 2958; 1 Jones, Liens (3d Ed.) § 28; 37 C.J. 311, § 9. The lien created by exhibit E, unless by reason of some special provision it contained, gave to the trustees, or to the plaintiff as their successor to a part interest in Hastings' indebtedness, no right to require the defendant to deliver the stock to them.

Exhibit E reserved to Hastings the right to sell any of the stocks for the payment or reduction of the loan or, subject to the approval of the defendant and the Hartford bank, for reinvestment. As any

such change in the securities held by the defendant must necessarily have had its approval, the only effect of this provision was to require approval by the Hartford bank. Whether that approval was secured is left somewhat uncertain by the report of the referee; he found at one point in it that until February 14, 1939, Hastings had made no investments not approved by the Hartford bank; but later in the report and in an amendment the referee made to it he stated generally that the Hartford bank was not consulted as to releases of stock to Hastings or reinvestments by him.

On a new trial the question may arise: Did the requirement of approval impose on the defendant the duty, before surrendering the stock to Hastings for reinvestment, of requiring Hastings to obtain the approval of the Hartford bank? The defendant was not a party to exhibit E and those who were could not, without its consent, impose any undue burden upon it or materially limit its rights. Such a lien as exhibit E established is equitable in its nature and in any proceedings to enforce it the question whether the provision requiring approval of the Hartford bank would be obligatory upon the defendant would depend upon equitable considerations, and it would be for the trial court to determine that question. If, under all the circumstances, the defendant was not otherwise affected than by a simple requirement that it refuse to deliver the Hastings stock unless it was assured that the Hartford bank approved, it might be held that, in equity, it was bound not to surrender the stock in the absence of knowledge of such approval; but if, for example, it deemed it necessary that, for its own security, other collateral be substituted for that it

held, and Hastings could not make that substitution without the use of some of the collateral in its possession, it might be that the trial court would find it inequitable to require the defendant to secure the approval of the Hartford bank before surrendering the stock to him. It hardly need be added that, even though the defendant unlawfully surrendered some of the collateral to Hastings, it would not be liable for so doing to the extent to which that collateral was restored to its possession. Exhibit E provided that, if other security for Hastings' debt to the defendant was substituted by him for that in the possession of the defendant, it should be subject to the "pledge" to the defendant and to the lien given by that instrument; and that provision would effectively extend the lien to any collateral lawfully so substituted; *Mitchell* v. *Winslow,* supra, 646; see *Windsor Trust Co.* v. *Champigny,* 105 Conn. 615, 622, 136 A. 556; and, as to that property, the same situation would exist. If, however, the defendant unlawfully surrendered such collateral to Hastings for reinvestment, it would be in no position to claim that the plaintiff must accept the substituted collateral as within the scope of its lien.

It is not easy to determine whether the parties to exhibit F intended to terminate the requirement in exhibit E that the collateral could be withdrawn by Hastings for reinvestment only with the approval of the defendant and the Hartford bank. While the defendant had no knowledge of exhibit F, it cannot be held liable if it acted in accordance with the rights given to the parties in it. Exhibit F authorized Hastings to withdraw securities for certain specified purposes without any requirement that the Hartford bank approve; it permitted him to increase

his loans from the defendant within certain limitations, but not beyond them without the approval of the Hartford bank as trustee and of the plaintiff; and, in stating the limitations upon his right to secure further loans, it provided that he might do so, to the extent that his indebtedness was reduced by the sale of collateral, "for the purpose of purchasing securities to be used as further collateral" for his indebtedness to the defendant, the plaintiff and the trustees for the other brother, and there is no requirement that the Hartford bank approve such a transaction. The only substantial distinction we can see between the "reinvestment" of collateral for which exhibit E provided and the power given in exhibit F is that "reinvestment" implies an immediate exchange of securities, whereas the authority given in exhibit F, while permitting an immediate exchange, would also provide for the reduction of the loan by the sale of securities at one time and at some later time further borrowing, up to the limit of the permitted debt, and the purchase with the money so secured of other securities to be deposited with the defendant as collateral. If Hastings desired at any time to change the collateral in the defendant's possession, he could easily avoid the requirement in exhibit E that the Hartford bank approve any reinvestment by directing the defendant to sell stocks it held in order to reduce the debt and, after a little time had elapsed, borrow an amount equal to that reduction and with the money purchase other collateral to secure the loan, again increased by that borrowing.

Indeed, an exhibit in evidence, which, as it was not made a part of the referee's report, we can use only for illustrative purposes, describes one of the

transactions between Hastings and the defendant which took place before the execution of exhibit F and which, therefore, amounted to a reinvestment, as follows: The defendant surrendered certain shares of the stock to Hastings; three days later, certain shares of the same stock were returned to it with a check for a considerable sum of money and this was credited to Hastings' account; the next day the defendant received a block of stock of another corporation from him, and charged his account with almost exactly the same sum it had received four days before. If we assume that such a transaction represents the method of "reinvestment" under exhibit E, it differs in no material respect from the exercise of the power given in exhibit F. It is not reasonable to conclude that the parties intended that, after the execution of exhibit F, approval by the Hartford bank and the defendant of a change in the collateral should be made in accord with the provisions of exhibit E, and the defendant would not be liable for returning collateral to Hastings to permit such a transaction to be carried out without that consent. After the execution of exhibit F there was no limitation upon the right of the defendant to return the stock it held to Hastings; and particularly would this be so when his debt to it was satisfied. When Hastings withdrew collateral from the possession of the defendant and purchased other securities which he deposited with it in substitution for those withdrawn, as it knew, in accordance with the concluding provision of exhibit F, these securities would be as much subject to the lien created by exhibit E as reinvestments of collateral made before exhibit F was executed.

Exhibit E speaks definitely of the loan which had previously been made by the defendant to Hastings. This was evidenced by a time note, and from time to time thereafter other time notes were given which represented the amount of the original note or the balance due on it after payments were made. Under exhibit E the lien created by it was subordinate only to such rights as the defendant had to secure payment of that particular loan. Hastings, however, borrowed other sums from the defendant, and gave demand notes for them. Exhibit F refers generally to "loans" to Hastings by the defendant but limits the extent to which he might become indebted to it for "loans," and refers to the reduction of "his loans." It was clearly the intent of exhibit F that Hastings' obligations to the defendant, whether represented by time or demand notes and whether demand notes were given before or after that instrument was executed, were to be regarded as a single indebtedness for the security of which the collateral in possession of the defendant was held. But when that indebtedness was satisfied, the right of the defendant to hold the securities was ended. It appears that on December 17, 1938, the balance due on the original note was finally paid and that on April 27, 1939, Hastings' other loans were finally discharged in full. The defendant then returned to Hastings all the collateral it held. This it had a right to do, and for its action in so doing it is not liable to the plaintiff.

Sometime thereafter a representative of the Hartford bank, learning of this, demanded that the securities be returned to the defendant, and this was done except as regards certain stock which Hastings had sold and a portion of the proceeds of

which had been applied to the final discharge of his indebtedness to the defendant. The stock so returned was thereafter used by the defendant as collateral for subsequent loans to Hastings; and various changes and substitutions were made. At some time after April 29, 1941, the defendant sold all the collateral it held to satisfy Hastings' indebtedness to it and realized a sum which, after paying his indebtedness, left in its hands $11,117.32, which it still holds. The defendant claims that the concluding provision in exhibit E in which Hastings agrees not to withdraw any collateral or any money resulting from its sale for his individual use "until my indebtedness to the two trust funds has been paid in full" authorized him to continue to use the stock held by the defendant as security for his indebtedness to the defendant under the provisions of exhibits E and F as collateral for further loans after his indebtedness to it was paid. Obviously the words quoted will bear no such construction; when that instrument was executed, Hastings' only debt to the defendant was that represented by the time note; and the quoted words merely meant that if his indebtedness to the trust funds was satisfied while the debt to the defendant was still outstanding he could thereafter avail himself of the collateral for his individual use.

When, on April 27, 1939, all the indebtedness of Hastings to the defendant under exhibits E and F was satisfied and it returned the securities it held to him, any right it had to them prior to the lien created by exhibit E was at an end. The report of the referee indicates that certain of these securities were redeposited with the defendant at most within fifteen days of their surrender to Hastings.

So far as appears, it had no knowledge when they were returned whether Hastings' indebtedness to the plaintiff had been paid; but it could easily have ascertained the true fact; and the trial court could well conclude that it took the securities with knowledge of the lien and that the charge created by it still existed. When stocks which it originally held as collateral or any stocks lawfully substituted for them and so subject to the lien created by exhibit E were returned to it, it took them subject to that lien as a first charge upon them. It might lawfully return any of them to Hastings without liability to the plaintiff; but if it so disposed of them as to place them beyond the reach of the lien it would be liable for the damages so caused. *Munson* v. *Munson,* 24 Conn. 115, 126; 65 C.J. 39, § 50; and see *Terry* v. *Bamberger,* 44 Conn. 558, 562, 23 Fed. Cas. No. 13,837, 14 Blatchf. 234; *New Britain Real Estate & Title Co.* v. *Hartford Acceptance Corporation,* 112 Conn. 613, 616, 153 A. 658; *Terzano* v. *Clemente,* 117 Conn. 267, 270, 167 A. 825.

Much of the controversy in the trial court and before us turned on the question whether Hastings increased his indebtedness to the defendant beyond the limits fixed in exhibit F without the approval of the Hartford bank and the defendant. As the plaintiff's claim is based upon an unlawful disposition of the collateral by the defendant in violation of his rights, it is immaterial to what extent Hastings became indebted to it, or for what debts it purported to hold the securities as collateral. Had it disposed of any of them to secure payment of loans to Hastings beyond the limits permitted by exhibit F, a very different question would be presented. As long as it did nothing to prevent the

plaintiff from imposing the charge of the lien upon the stock, it could not be liable to him; and merely holding the stock as collateral for an indebtedness of Hastings beyond the scope of exhibit F would not bring about such a result.

It would serve no purpose to recite the dealings between Hastings and the defendant as found by the state referee. Both the referee and the court were at a great disadvantage because of the failure of counsel to make clear their claims, a failure quite understandable in view of the great lack of precision in the controlling instruments. Suffice it to say that no facts are before us which would make it possible to reach a determination upon the proper judgment to be rendered in the light of the rights of the parties as we have defined them. The trial court found the plaintiff to be entitled to recover damages upon this basis: It added together the value of the securities the defendant delivered to Hastings when the indebtedness due from him was satisfied on April 27, 1939, and the proceeds of the sale of certain stock it stated to have been sold on November 3 and 7, 1938, and January 18, 1939, and from the total it deducted the balance of the original loan due on June 30, 1938, and the amount of certain additional loans which it held Hastings was entitled to obtain under exhibit F; and, as the plaintiff had by his assignment only a half interest in Hastings' original indebtedness to the trust funds, it rendered judgment in his favor for one-half the remainder so reached, with interest. It is sufficient to point out that the basis of the plaintiff's claim is the wrongful disposal of the collateral subject to the lien created by exhibit E in such a way as to place it beyond the reach of that lien; and that, as

we have pointed out, as long as the defendant held the stock it is immaterial to the issues in this case whether Hastings borrowed money from the bank in excess of the increase in the loans permitted by exhibit F, and the general tenor of the finding of the referee is that the defendant returned the stock sold in November, 1938, and January, 1939, to Hastings and it was sold by him, not the defendant. The only ground upon which liability of the defendant to the plaintiff could be based in this action, so far as the facts now before us show, is that, if it is found that the requirement of approval of reinvestments by Hastings before exhibit F was executed was binding upon the defendant and was not obtained, the defendant returned collateral to him for reinvestment by him without that approval, or that, after any of the collateral it originally held or securities which properly became substitutes for that collateral were deposited with the defendant subsequent to the payment of Hastings' final indebtedness to it on April 27, 1939, it did not return those securities to Hastings but so disposed of them as to place them beyond the reach of the lien created by exhibit E.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.