BLOMQUIST-FORD, INC. *v.* THOMAS J. BURKE ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued February 9—decided April 24, 1962

*William F. Geenty,* with whom was *John W. Kline,* for the appellants (defendants).

*Jerrold H. Barnett,* with whom were *R. William Bohonnon* and, on the brief, *Arthur T. Gorman* and *Edwin F. Raffile, Jr.,* for the appellee (plaintiff).

SHEA, J. The plaintiff, a corporation, brought this action for the specific performance of an agreement to sell certain real estate in Madison, and for damages. In their answer, the defendants, Thomas J. and Elsie G. Burke, admitted the execution of the agreement but, in effect, denied any breach of it on their part. In the first special defense, they alleged that when they tendered a proper warranty deed, the plaintiff refused to pay the balance due under the agreement. In the second special defense, they alleged that the agreement was intended to provide for the conveyance of the property on payment by the plaintiff of $38,400, less a mortgage to be assumed by the plaintiff and with certain adjustments for interest on the mortgage, taxes for the current year and rent for the current month, but that the agreement, when made, inadvertently did not limit the rent adjustment to the current month. A counterclaim adopted the allegations of the two special defenses and claimed damages. The court found the issues for the plaintiff on the complaint and the counterclaim and ordered the defendants to convey the premises to the plaintiff on the payment by it of a stated sum, after the adjustment of taxes and other items as set forth in the agreement. The defendants have appealed, claiming that the court erred in reaching certain conclusions when the subordinate facts did not support them. The defendants also assigned error in the finding and in the overruling of certain claims of law.

The finding, which is not subject to material correction, recites these facts: On April 1, 1954, the named defendant, by indenture, leased premises situated in Madison to George W. Schneider for seven years at an annual rental payable in monthly instalments. Paragraph 6 of the lease contained the

following provision: "The Tenant shall have the option to purchase the hereby demised premises at any time after the end of 3 years at a price to be hereafter mutually determined and agreed upon by the parties. In the event of the purchase of the premises pursuant to the provisions of this Paragraph, all monies paid as rent shall be credited toward the purchase price of said premises." The tenant was given the right to assign the lease or sublet the premises without obtaining the written consent of the lessor. On January 15, 1958, Schneider, by written agreement, assigned all of his rights in the lease to the plaintiff. The lease was not recorded until January 17, 1958, the day on which the assignment of it from Schneider to the plaintiff was recorded. Since January, 1958, the plaintiff has conducted business on the premises and has paid the monthly rent to the defendant Thomas. Both defendants have, since January, 1958, done business with the plaintiff at the premises. On several occasions, during the spring of 1959, the president of the plaintiff discussed with Thomas the possibility of buying the property. In these discussions, no reference was made to the Schneider lease, its assignment to the plaintiff or the option to purchase contained in it. The plaintiff and Thomas finally reached an agreement, and it was reduced to writing by the plaintiff's attorney. The sales price for the property was $38,400; the deed was to be delivered and the purchase price paid on or before May 15, 1959, as follows:

"By the above part payment      $   500.00

By the assumption of any and all mortgages      4,400.00

By adjustment of rents and leases at closing

"By further payment of cash, sub-
    ject to the aforesaid adjustments
    at closing                                    "

The space opposite each of the last two items was left blank.

Before signing the agreement, Thomas informed Schneider, the original lessee, of the impending sale to the plaintiff and requested Schneider to release him from any obligations under the lease. Schneider told Thomas that he had sold the lease to the plaintiff and had no interest in it, but he promised to sign a release anyway. On April 29, 1959, Thomas and the president of the plaintiff signed the agreement of sale. The defendant Elsie, unknown to the plaintiff, owned an undivided one-half interest in the property, but she did not sign the agreement. Thomas acted for her, and she knew that an agreement of sale was being executed. A release providing for the mutual relinquishment of all claims arising out of the lease by Thomas, Schneider and their executors, administrators, heirs and assigns was prepared by the defendants' lawyer and was signed and executed by Thomas on May 2, 1959. The release was then mailed to Schneider for his signature. On receiving the document, Schneider consulted his attorney, who was also the attorney for the plaintiff, and thereafter he refused to sign the release.

On May 5, 1959, the plaintiff's attorney, by letter to the defendants, gave formal notice that the plaintiff was thereby exercising the option to purchase the premises in accordance with paragraph 6 of the lease of April 1, 1954, "now that the price has been mutually determined and agreed upon." The letter further notified the defendants that "pursuant to Par. 6 of the Option all monies paid as rent

under the lease shall be credited toward the purchase price of said premises." This was the first time that any reference had been made by any of the parties to the option and rent credit provision of the lease. On May 15, 1959, the date fixed by the agreement of sale for the transfer of title, the plaintiff insisted on credit for all rent paid under the lease from April 1, 1954, to May 1, 1959, inclusive. Such a credit, when coupled with other adjustments and set off against the sale price of $38,400, would leave a balance of less than $15,000 to be paid in cash. The defendants refused to allow any credit for rent paid under the lease. They were willing to convey the premises by warranty deed but demanded a cash payment in excess of $33,000 in exchange therefor.

The court concluded that the words "rents and leases" in the agreement of sale of April 29, 1959, referred to the Schneider lease and the rent paid thereunder; that the blank space opposite the notation "By adjustment of rents and leases at closing" was for the insertion of the amount of rent credits under the option provision of the lease; and that the blank space opposite the phrase "By further payment of cash, subject to the aforesaid adjustments at closing" was for the cash payment which would be required after the deduction of the down payment, the amount of the mortgage, and the rent credits under the option provision, once they had been computed. The court also concluded that the parties intended to make the option provision a part of the agreement of sale, that the plaintiff was ready, willing and able to perform its part of the agreement, and that the defendants had wrongfully refused to convey the premises.

The defendants attack these conclusions, claim-

ing that they are not supported by the subordinate facts. The option provision in the lease was subject to the condition that the purchase price be mutually determined and agreed upon by the parties. From the language of the lease, it is clear that rent paid under it would be credited on the price only in the event of a purchase made "pursuant to" the option provision. Thus, it became essential for the parties to reach a mutual determination or agreement as to price in the light of this option, and because of it, before any credit for rent could be allowed. As the conclusions which are under attack are tested, it becomes of crucial importance that the parties, throughout their negotiations, made no reference whatever, at any time, to the lease or the option provision. This was still the situation when the agreement of sale was signed on April 29, 1959. The defendants were entitled to assume that the plaintiff, in executing the agreement, was not invoking the option provision of the lease but was acting independently of it. It was not until several days after the agreement was signed that the plaintiff, through a letter by its attorney, made reference to the lease for the first time and stated that the plaintiff was thereby exercising its option to purchase. These events, when considered in sequence, are persuasive evidence of the intention of the parties when the agreement of sale was executed. They clearly demonstrate that the parties were not acting "pursuant to" the option provision when they agreed on the price. If it had been otherwise, the letter of May 5, 1959, from the plaintiff's attorney to the defendants would have been wholly unnecessary. Although it may be true that the plaintiff harbored a secret intention to enter into a contract which would permit it to deduct from the

purchase price the amount of the rent paid under the lease, that intention, since it was without expression or communication, is of no significance. *Hansel* v. *Hartford-Connecticut Trust Co.,* 133 Conn. 181, 193, 49 A.2d 666; *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427. There was nothing in the agreement of sale or in the circumstances surrounding its execution to support the conclusion that the parties were acting under the option provision of the lease.

The defendants have abandoned any claim that the court erred in rendering judgment for the plaintiff on the counterclaim.

There is error only as to the judgment on the complaint, the judgment on the complaint is set aside and, as to the complaint, the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.