## STATE OF CONNECTICUT *v.* HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued December 5, 1968—decided January 16, 1969

*John Gill,* for the appellant (defendant).

*David B. Beizer,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *F. Michael Ahern,* assistant attorney general, for the appellee (plaintiff).

KING, C. J. In 1956, the defendant Housing Authority of the city of Bridgeport contracted with the state employees retirement commission, which was an agency of the plaintiff, the state of Connecticut, authorized, under General Statutes § 7-453, to enter into such contracts. The purpose of the contract was to provide the defendant's employees with the protection of the Old-Age, Survivors, and Disability Insurance Benefits system under the federal Social Security Act. 49 Stat. 622, as amended, 42 U.S.C., c. 7 §§ 401–425. Pursuant to the terms of this contract, the defendant agreed to make certain deductions from the wages of its employees and to pay the same, together with an equal amount representing the employer's contribution, to the retirement commission. The retirement commission would then, under General Statutes § 7-453, remit these sums to the secretary of the treasury of the United States. See also General Statutes §§ 7-452—7-459a.

The present controversy arises out of the defendant's refusal to pay to the retirement commission $9346.76, which was the agreed total amount of the deductions and contributions as required by the Social Security Administration, between 1956 and 1962, on account of the group herein involved who performed services for the defendant as special policemen in its housing projects. In 1963, the plaintiff, the state of Connecticut, was compelled to, and did, pay that sum to the Social Security Administration.

In this action, the plaintiff seeks to recoup from

the defendant the sum which the plaintiff had to pay on behalf of the special policemen. It was stipulated that the special policemen should be considered as a group and that the question to be determined was the employer-employee status, if any, between the defendant and the special policemen involved.

These special policemen were assigned by the Bridgeport police department to patrol and safeguard the defendant's housing projects. The plaintiff maintained, and the trial court agreed, that these special policemen were employees of the defendant within the meaning of the Social Security Act; that the defendant should have made the necessary deductions and contributions; and, consequently, that it was obligated to reimburse the plaintiff in the agreed amount. From this decision, the defendant appeals.

The action of the trial court was based on its conclusion that the special policemen were employees of the defendant as defined by the Social Security Act. The defendant claims that this conclusion was erroneous. It argues that, because its liability is based on its contract with the retirement commission, the question of coverage must be determined according to the terms of that contract. The acceptance of this claim would not benefit the defendant. In the contract, the defendant agreed to "report and forward to the [state retirement] commission . . . the amounts deducted . . . from the wages of its *employees whose services are covered under the [Old-Age, Survivors, and Disability Insurance Benefits] system*". (Emphasis added.) The "system" was created under title II of the Social Security Act, which defines the term "employee" in 64 Stat. 500 § 210 (k) (2), 74 Stat. 937 § 103 (j) (2) (A) (B), 42

U.S.C. § 410 (j) (2). In the face of the express terms of the contract, the defendant cannot now assert some hitherto unexpressed intention it may have had not to include these special policemen in the contract. *Blomquist-Ford, Inc.* v. *Burke,* 149 Conn. 443, 449, 181 A.2d 255; *Hansel* v. *Hartford-Connecticut Trust Co.,* 133 Conn. 181, 193, 49 A.2d 666. The trial court correctly construed the term "employee", as used in the contract, in terms of the Social Security Act.

The Social Security Act defines the term "employee" as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee". 64 Stat. 500 § 210 (k) (2), 74 Stat. 937 § 103 (j) (2) (A) (B), 42 U.S.C. § 410 (j) (2). This definition has been amplified by a federal regulation which states the common-law definition of "employee" as involving basically whether the person for whom the services are being performed has the right to control the person performing the services, both as to the result to be accomplished and as to the detailed means and methods by which it shall be accomplished. 20 C.F.R. § 404.1004 (c) (2). If such control is present, the person performing the services is the employee of the other. An important factor in determining control is the existence or nonexistence of the power to discharge. Ibid.; see *Cody* v. *Ribicoff,* 289 F.2d 394 (8th Cir.); *Westover* v. *Stockholders Publishing Co.,* 237 F.2d 948 (9th Cir.); Rev. Rul. 56-154, 1956-1 Cum. Bul. 477.

The foregoing definition is substantially identical to Connecticut's own common-law definition. *Kinsman* v. *Hartford Courant Co.,* 94 Conn. 156, 159, 108 A. 562; *Thompson* v. *Twiss,* 90 Conn. 444, 447, 97 A.

328; *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 525, 28 A. 32. Our definition, also, attaches importance to the power to discharge. *Bieluczyk* v. *Crown Petroleum Corporation,* 134 Conn. 461, 467, 58 A.2d 380.

An additional consideration has been advanced by the United States Supreme Court, which has stated that "in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service". *Bartels* v. *Birmingham,* 332 U.S. 126, 130, 67 S. Ct. 1547, 91 L. Ed. 1947.

Although the special policemen were appointed and assigned by the police department, five of the eight policemen who testified at the trial stated that they had been interviewed, approved, and offered a job at the housing project by personnel of the defendant before being assigned to the projects. These special policemen, until April, 1962, reported for work daily at their assigned projects and did not have any substantial contact with the police department except with regard to being paid and making arrests. The special policemen submitted the number of hours they worked to the police department, which established their rate of pay, paid them accordingly and billed the defendant monthly, and by it was reimbursed for the wages which had been paid.

On the crucial issue of control, the court found that the defendant determined the hours of work of each special policeman and the particular housing project which he would patrol, and that the defendant also instructed the special policemen on such particulars as which buildings to safeguard closely, the replacement of burned-out light bulbs, the taking of messages concerning various tenant complaints,

and the reporting to the defendant in writing of certain occurrences such as breakage and arrests. There is nothing to indicate that the defendant had ever discharged any of the special policemen involved in this action or, for that matter, that it had ever had any ground to discharge any of them. While this determination requires the elimination of the finding of the court that the defendant had discharged any special policemen whose work was unsatisfactory, it is not, as the defendant claims, fatal to the court's conclusion that the special policemen, in the light of the foregoing facts, were employees of the defendant. There is no finding that the defendant lacked the power of discharge had there been any occasion for its exercise. Indeed, it had discharged a special policeman although not one involved in this proceeding.

The defendant argues that it is the "settled rule in Connecticut that a special policeman is the employee of the appointing authority" and cites, in support of this claim, two workmen's compensation cases, *Lake* v. *Bridgeport,* 102 Conn. 337, 128 A. 782, and *Mathurin* v. *Putnam,* 136 Conn. 361, 366–68, 71 A.2d 599. Neither case is controlling here. There are material differences between each case and the case at bar. In the *Lake* case, the special policeman, held to be an employee of the police department, although he was assigned to a theatre, neither asked for nor received instructions from the theatre management as to his duties; the presence of a special policeman at the theatre was required by city ordinance; and the injury took place while he was on his way to the police precinct at which he was required to report both before going on duty and after going off duty. Cf. *McKiernan* v. *New Haven,* 151 Conn. 496, 500, 199 A.2d 695. In the *Mathurin* case,

the special policeman was assigned to football games at the request of the board of education, and the court held that, even if it were assumed that the plaintiff was the employee of the board of education, the compensation commissioner could have found, as he did, that, since the injury occurred while the plaintiff was escorting from the field a man he had arrested, the plaintiff was at that time acting in his capacity as a police officer. *Mathurin* v. *Putnam,* supra, 368.

The court's conclusions that the group involved were employees of the defendant and that the defendant is obligated to reimburse the plaintiff in the amount claimed are fully supported by the subordinate facts.

There is no error.

In this opinion the other judges concurred.